ABEL M. SMITH

*v.*

CHARLES DOYLE.

1. MORTGAGE—*what constitutes.* Where the land of a debtor has been sold under execution, and he is unable to redeem from the sale, and he confesses judgment in favor of another creditor, upon a prior existing indebtedness, and afterwards executes a mortgage upon the same premises to such judgment creditor, with the express understanding that the latter should redeem from such sale, and give the debtor one year to pay the original debt, redemption money, interests, and all costs, whereupon he was to surrender to him the premises so mortgaged, and sold, free from such incumbrance, and such judgment creditor did so redeem from such sale, and received a sheriff's deed to the premises; and at the further solicitation of the judgment creditor, such debtor did afterward execute to him a deed to these premises, in which homestead and dower are relinquished to

further secure the loan, as the debtor understood it: *Held*, that the transaction should be treated as a loan, and the mortgage and deed subsequently given as a security for the money so advanced, rather than a sale, and that the debtor had a right to redeem, although he had yielded peaceable possession of the premises, under the belief that he had no legal remedy.

WRIT OF ERROR to the Circuit Court of Scott county; the Hon. CHARLES D. HODGES, Judge, presiding.

The opinion fully states the facts.

Mr. MURRAY McCONNEL and Mr. JOHN G. HENDERSON, for the plaintiff in error.

Messrs. MORRISON & EPLER, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, brought by Abel M. Smith, in the Scott Circuit Court, against Charles Doyle, to redeem certain premises from a mortgage. It appears that complainant, in the spring of 1861, was the owner of a house and lot in the town of Naples. That at the spring term, McEvers, Springer & Co., recovered a judgment in the Scott Circuit Court against complainant; that the premises were sold under the judgment, but he still had a homestead right, and the right to redeem from the sale.

It is admitted that plaintiff in error was indebted to defendant in error, and it appears that he gave to him a mortgage and note to secure the debt, and subsequently, by some new arrangement, a power of attorney to confess a judgment. That a judgment was confessed on the 29th of April, 1862, for $302 93 on the note, and on the second day of May, following, plaintiff in error and his wife executed a deed to the premises in which homestead and dower were relinquished. It appears that defendant in error sued out execution on his

judgment, and had it levied upon the premises, and he redeemed them from the sale by McEvers, Springer & Co., and at the sale under his execution bid the amount required to redeem, and became the purchaser, and received a deed at the time from the sheriff.

Plaintiff in error insisted that defendant in error agreed to loan him the money necessary to redeem, and that the judgment was confessed to enable him to redeem through defendant in error, as the year had expired within which plaintiff in error could avail of that right, and that he was to have one year in which to pay the money and have the property. He also insists that the mortgage has never been foreclosed, and the premises are subject to redemption. Defendant denies that he redeemed the property for plaintiff in error, or agreed to loan him the money for that purpose, but insists that the judgment was confessed and the deed was made to enable him to secure his debt. And that peaceable possession of the property was surrendered to him under his deed. It appears that the property was worth from one to two thousand dollars.

There were several witnesses who testified in the case, and there is some conflict. Fooshee swears that defendant in error stated he was willing to give the property back if plaintiff in error would pay him his money. That this occurred after possession of the property was surrendered to defendant in error. Plaintiff in error states that a contract was made to redeem; that defendant, by the arrangement, was to redeem and wait one year for his money; that the redemption money was to be an additional loan. That this agreement was prior to April 28, 1862; that he knew nothing of the sheriff's deed to the defendant in error, who never spoke of it; that he placed confidence in him because he professed to be a friend. That he surrendered possession because he believed he had no remedy, and was too poor to litigate.

Newick testified that plaintiff in error offered to redeem in June, 1863, but defendant in error refused to receive the

money. That plaintiff in error offered to get gold for the purpose, but he still declined. Shaner states that defendant in error said, immediately after the judgment was confessed, that he had secured his claim against plaintiff in error, and was to wait one year for the money. Hinman testified that defendant in error stated, immediately before the redemption, that if plaintiff in error would secure his debt, he would wait one year for the money. That he saw him, at the request of plaintiff in error, in reference to the matter, and that the latter agreed to the proposition.

Abbott testified that nothing was said about a redemption at the time the power of attorney was executed, but defendant in error, after his return from Greene county, where the judgment was confessed, stated to plaintiff in error, if he would pay him all money loaned, costs, interest, etc., in gold, within one year, he might have the property back. That the conversation occurred in Sear's store, but does not know of any prior agreement.

Defendant in error stated, as a witness, that he loaned plaintiff in error gold; denies that there was any contract for a redemption from him, but stated that he told him at Sear's store what Abbott testified he said. That plaintiff in error never offered to redeem, and never told any person he had given a year to redeem, and did not tell Hinman that if plaintiff in error would secure his debt he would wait a year for his money. Sear states, that in the conversation at his store, defendant wanted gold; that plaintiff in error demanded possession of the property. Sinkins testified, that during the month of September, 1862, the parties came to his office, and plaintiff in error said they had agreed on a settlement of the controversy about the property, and gave witness the terms of the agreement, in the presence of defendant in error, and requested witness to draw up a bond for a deed; that he drew the bond, but it was never executed.

Although not entirely satisfactory and free from doubt, we think it appears from this evidence that defendant in error did agree to redeem and give time to plaintiff in error to pay the debt. That the advance of the money to redeem from the judgment of McEvers, Springer & Co., was a loan. If not, why did plaintiff in error so repeatedly say that if his money was paid to him within one year, plaintiff in error should have his property. And we are fortified in this belief from the circumstances of the case. At the time the judgment was confessed, the year had expired within which plaintiff in error could redeem as the debtor, or defendant in error, as his mortgagee, could redeem. The judgment being older than the mortgage, it was cut off, and had ceased to be a lien, and no person but a judgment creditor could redeem. And defendant in error was therefore under necessity of procuring a judgment against plaintiff in error, and redeem as a judgment creditor, or lose his debt. And this being the case, it was natural that he would, to avail himself of this only mode of securing his debt, be willing to offer inducements to plaintiff in error to place him in that position. And it is not reasonable to conclude that plaintiff in error would not only confess a judgment to enable him to redeem property worth four or five times the debt at the very least, for which it had been sold, and then deed it to him and release his homestead, and his wife her dower, that he might obtain the property at precisely the amount necessary to redeem from the purchase under the execution, and still leave the judgment then confessed unpaid.

It is not reasonable to suppose that plaintiff in error intended to be so generous, when he would become houseless by the act, and leave himself in debt, and confer on defendant the title to property worth, as the evidence shows, between one and two thousand dollars. Justice did not require it, and we do not believe that it was intended. To have accomplished what the evidence shows he did, defendant in error must

have offered some inducement, and it must have been the agreement to permit him to redeem from the mortgage and the judgment, or he must have practiced some fraud on plaintiff in error. The question then arises, whether the whole transaction, when considered in all of its parts, constituted a loan of money, and taking the title to secure its payment operates as a mortgage, from which a redemption may be had.

That would seem to have been the intention of the parties, and inasmuch as equity never regards mere form, but always looks to the substance as indicated by the intention of the parties, such being the case, the transaction should be treated as a loan and a security for the money, rather than a sale, unless it is prohibited by some positive rule of law. In this case, defendant in error held a mortgage on the premises for indebtedness already incurred, and the note was given that a judgment lien might be obtained on the same premises, and as the money seems to have been advanced to secure the mortgage debt, it might be referred to as forming a part of it, and to have been covered by the mortgage, and not to have been a foreclosure, and appellant as having a right to redeem from the mortgage by paying the original sum, with that subsequently advanced to redeem. Had defendant in error, to protect his mortgage, simply redeemed from the sale, then he would have been compelled to foreclose for the amount due by his mortgage, as well as for the sum advanced, to redeem. In the mode adopted, he redeemed, not as a mortgagee, but as a judgment creditor.

There is no evidence in the record from which it may be inferred, that he foreclosed his mortgage, but he simply procured the confession of a judgment on the debt, to enable him to redeem from the sale of McEvers, Springer & Co. He still holds the mortgage and the mortgage debt wholly unsatisfied. And having agreed to advance the money necessary to redeem, under the agreement which was for the mutual benefit of the parties, it must be held, that the advance was

made as a loan, or at least for the protection of his mortgage debt, which was apparently lost when the arrangement was made. If so, then a court of equity must treat the transaction as still subsisting as a mortgage, and appellant as having a right to redeem, upon paying the amount due on the mortgage, as well as the sum advanced to redeem from the Mc Evers, Springer & Co. judgment, with ten per cent. interest, and the costs of the confession of judgment. To this extent the decisions of this court have gone. The court below, therefore, erred in dismissing the bill, and that decree is reversed and the cause remanded.

*Decree reversed.*