GEORGE B. HOVLAND V. C. B. BURROWS.

FILED OCTOBER 24, 1893.    No. 5096.

Pleading: ORDER STRIKING OUT PORTION OF DEFENSE. A defendant has a right to set up his entire defense, and where such defense consists of a series of acts, which together constitute one transaction, a portion of the same cannot be stricken out against his objections.

ERROR from the district court of Madison county. Tried below before NORRIS, J.

The court below sustained a motion to strike out, as redundant, scandalous, and irrelevant, certain portions of the answer. The ruling is assigned as error. The answer and motion are set out in the opinion.    *Reversed.*

*Allen, Robinson & Reed,* for plaintiff in error:

Fraud may always be alleged where it exists and cannot be proved without being alleged, where it is germane to the issue and forms one of the cardinal facts constituting the defense. (*Tepoel v. Saunders Co. Nat. Bank,* 24 Neb., 816; 8 Am. & Eng. Ency. Law, p. 653.)

While it is competent to strike out redundant, scandalous, or irrelevant matter from a pleading, the party who makes the motion must be prejudiced thereby. (Sec. 125, Code; *Cate v. Gilman,* 41 Ia., 530; *Martin v. Swearengen,* 17 Ia., 346; *Molony v. Davis,* 15 How. Pr. [N. Y.], 261.)

It was claimed in the court below that the matter stricken out under the first assignment of Burrows' motion was rendered improper because it was alleged that in consideration of the fraud the parties had entered into a new contract which superseded the one induced by the fraud. The motion does not deny that this is proper defensive matter, but assails it as unnecessary to show or establish that defense. These objections are not grounds of a motion to strike. (*Specht v. Spangenberg*, 70 Ia., 488; *Walker v. Pumphrey*, 48 N. W. Rep. [Ia.], 928.)

*Reese & Gilkeson* and *Wigton & Whitham, contra:*

A settlement by the parties after full knowledge of the alleged fraud is a complete bar to relief on the ground of the fraud. (*Parsons v. Hughes*, 9 Paige Ch. [N. Y.], 591; *O'Dell v. Rogers*, 44 Wis., 136, 181; *Rogers v. Higgins*, 57 Ill., 244, 250; *Adams v. Sage*, 28 N. Y., 103, 109.)

Testimony would, therefore, be inadmissible to impeach the note alleged in the answer to have been given as a renewal of the notes claimed to have been obtained by fraud, because given with a full knowledge of all the facts constituting the alleged fraud. The allegations of fraud were, therefore, wholly unnecessary and redundant, and if allowed to remain would have been highly prejudicial to Burrows. But whether prejudicial or not, as such allegations were not necessary as the foundation of pertinent and proper testimony, they were rightly stricken out. (*Hale v. Wigton*, 20 Neb., 83; *Coquillard v. Hovey*, 23 Neb., 622; *Columbus, H. & G. R. Co. v. Braden*, 11 N. E. Rep. [Ind.], 357; *Davis v. Davis*, 21 N. E. Rep. [Ind.], 1112, 1114; *Petree v. Fielder*, 29 N. E. Rep. [Ind.], 272.)

MAXWELL, C. J,

This is an action to foreclose a mortgage on real estate. The petition is in the ordinary form. To this petition the defendant filed an answer as follows:

"And now comes the defendant and by way of amended answer to the petition of the plaintiff in this case says:

"1. This defendant admits the making and delivery of the notes and mortgage sued on in this case and the recording of the latter.

"2. That on and prior to the 14th day of July, 1887, the plaintiff was the owner and possessed, at Newman Grove, Nebraska, of a miscellaneous stock of second-hand merchandise, consisting of dry goods, boots, shoes, hats, caps, clothing, notions, groceries, and such other goods and general merchandise as are generally kept for sale and sold in a retail country store, and which was worth at wholesale prices at said time not to exceed the sum of $2,787, as the said plaintiff then and there well knew. Said stock of merchandise was at said time stored in a store-room, securely boxed and packed, and secure from examination or inspection by this defendant, except a few hundred dollars' worth of the best part thereof, which was displayed on the shelves of said store-room and could be examined. Said stock of merchandise had been traded for by the plaintiff at Rising City, Nebraska, in the month of May, 1887, and at said time a pretended invoice of them had been made at their alleged wholesale value by some one to this defendant unknown, at the instance and request of the plaintiff, which pretended invoice was wholly false, fraudulent, and untrue, and greatly in excess of the actual wholesale value of said merchandise, as the said plaintiff, at the time of the transactions hereinafter stated and alleged, well knew. That on or about the said 14th day of July, 1887, the said plaintiff began negotiating with this defendant for the sale to him of the said stock of merchandise, and then and there, for that purpose and to that end, falsely, fraudulently, and well knowing the same to be untrue, represented and stated to this defendant that said stock of merchandise was a first-class, fresh, A No. 1 stock of merchandise, free in all respects from any defects or impairments; that it had been

purchased at wholesale less than a year prior to that time and that he, the said plaintiff, would warrant the same in all respects as being a good fresh, A No. 1 stock of merchandise; that all of said merchandise in boxes was as good as that displayed on the shelves, and that the latter was a fair sample of the former, and that he would warrant and guarantee to this defendant the correctness in all respects of said pretended invoice of said stock of merchandise, which said invoice he then exhibited to this defendant, showing said stock of merchandise to be of the wholesale value of $8,808.84, and stating and representing at the time to this defendant, fraudulently and falsely, and well knowing the same to be false and untrue, for the purpose of inducing this defendant to purchase said stock of merchandise; that said invoice was in all respects true and correct, and genuine, and fairly represented the wholesale value of said stock of merchandise; that at said time that part of said stock of merchandise which was displayed on the shelves of said store building was the best part thereof, and was so displayed by the procurement of the plaintiff to mislead this defendant, and induce him to believe that the part thereof in boxes was of the same quality and value; that relying upon the truthfulness of the said several representations, statements, warranties, and guaranties so made to him as aforesaid by the plaintiff, and believing them to be true, and believing said part of merchandise in boxes was of the same quality and value as that part thereof displayed in the shelves of said store building, this defendant was induced thereby to purchase and did purchase of said plaintiff said stock of merchandise at the agreed sum of $8,808.84, the sum which the said plaintiff had so falsely and fraudulently represented and stated to this defendant that said stock of merchandise was worth at wholesale value. This defendant paid the plaintiff for said stock of merchandise as follows: 'discount of twenty-five per cent off of said sum pursuant to contract, $2,202.21; conveyance of real

estate at the agreed sum of $1,300; and credit for goods previously sold from said stock, $503; and for the remainder this defendant gave the plaintiff his negotiable promissory note, payable at a future date.' That this defendant would not have purchased of said plaintiff said stock of merchandise, or made said payments, or given said promissory note, but for said false and fraudulent representations, statements, warranties, and guaranties of said plaintiff so made to him, which he relied on and believed to be true at the time. This defendant alleges and charges the fact to be that each and all of said representations, statements, warranties, and guaranties so made to him by plaintiff were, when made, and are now wholly false and untrue and fraudulent, and were known by the plaintiff to be false, fraudulent, and untrue when so made; and they were made by him for the sole purpose of misleading and defrauding this defendant into purchasing said stock of merchandise; and he was thereby induced to make such purchase and payments and give said promissory notes by reason thereof; that in truth and in fact the said stock was not a first-class, fresh, A No. 1 stock of merchandise, and was not free in all respects or in any respect from defects or impairment; but on the contrary the same was rotten, old, shelf-worn, unsalable, and a condemned stock of merchandise and did not have merchantable value to exceed the sum of $2,787, as the plaintiff then and there well knew; that said stock had been purchased many years prior to the said 14th day of July, 1887, and consisted of condemned, impaired, defective, and unsalable remnants and refuse articles of merchandise, as said plaintiff at the time well knew; that said pretended invoice was not a true, correct, or honest invoice of said stock, or of the wholesale value thereof, and the goods in boxes were not of the quality or value of those displayed on the shelves, but were much inferior and of but little value, all of which was to the plaintiff well known and to this defendant unknown at the time of making said contract of

purchase; that in drawing the notes given to secure the deferred payments of said stock of merchandise the said plaintiff designedly and fraudulently neglected to deduct therefrom the said twenty-five per cent discount as aforesaid and fraudulently and designedly included the same in said notes; that the sole and only consideration of the note and mortgage sued on in this case are said notes above mentioned, of which the note in suit is a renewal, and given under the circumstances and for the purpose hereinafter stated; that shortly after the purchase of said stock of merchandise of the plaintiff, this defendant discovered the said fraud that had been practiced on him by the plaintiff and annulled the said contract of purchase of said stock of merchandise, and he and the said plaintiff then and there, and in consideration thereof, made and entered into a new and different contract with reference to said stock of merchandise, whereby they annulled, canceled, and set aside said contract of purchase of said stock of merchandise by this defendant, agreed that said stock of merchandise did not exceed in value the sum of $3,000 at any time, and that this defendant should thereafter hold said stock of merchandise for the plaintiff and as his property until an opportunity presented itself for the plaintiff to trade said stock to some third person in conjunction with another stock then owned by this defendant separately for other property; that some time in the month of April, 1888, the exact time this defendant cannot state, the plaintiff represented and stated to this defendant that they, the plaintiff and this defendant, could trade their respective stocks together, one of which was the stock of merchandise aforesaid, to one Isaac Peed, of Pierce county, Nebraska, for land and live stock, and at the solicitation of the plaintiff, this defendant went with the plaintiff to Pierce county to consummate said trade with the said Isaac Peed; while there the plaintiff traded said stock of merchandise referred to to said Isaac Peed for real estate, and

this defendant traded his stock of merchandise, previously and separately owned by him, to said Isaac Peed for real estate and live stock, and at the plaintiff's request this defendant delivered both of said stocks to said Isaac Peed. Thereafter and some time in the month of April or May, 1888, the exact time this defendant cannot state, the said Isaac Peed having failed to execute his conveyances of said real estate to the plaintiff and defendant respectively, as he had agreed to do, this defendant, at the request of the plaintiff, went to the residence of said Isaac Peed, in said Pierce county, Nebraska, to procure said conveyances, and he then and there ascertained that said conveyances had, at the instance of the plaintiff, been made and executed to this defendant, as grantee, and not in severalty to the plaintiff and defendant, as they should have been executed. This defendant took said conveyances to the plaintiff at Norfolk, Nebraska, and called the plaintiff's attention to the fact that he, this defendant, had been made the sole grantee therein, and the plaintiff then stated to him, as the fact was and is, that he, the said plaintiff, had caused the said Isaac Peed to make said conveyances of said real estate to this defendant as sole grantee thereof because he, the plaintiff, desired this defendant to hold the nominal title to all of said real estate procured of said Isaac Peed by the plaintiff and this defendant as aforesaid, and to execute to the plaintiff the note and mortgage sued on as an accommodation to him for short time in business; and this defendant alleges that then and there the said plaintiff stated and represented to this defendant that he desired this defendant to make and deliver to him, the plaintiff, the note and mortgage sued on in this case as a matter of business accommodation, to the end that he, the plaintiff, might use said note and mortgage as collateral security in obtaining money to start a bank with, and they should be returned to this defendant before maturity by the said plaintiff, at which time the plaintiff would take a conveyance for his part of said real estate; and the defend-

ant says that same were executed and delivered by him to the plaintiff wholly without any consideration whatever, and as a mere matter of temporary business accomdation as aforesaid.

"3. This defendant alleges that said note and mortgage sued on are, and ever have been, wholly without any consideration whatever; that no consideration therefor ever moved from the plaintiff to the defendant therefor.

"4. That on or about the 27th day of November, 1888, the said plaintiff received of this defendant ten promissory notes made by third parties to this defendant for collection, agreeing with this defendant at the time to account to him therefor and for the preceeds thereof, which said promissory notes and the interest thereon now amount to fully $1,000; and that the said plaintiff, before the commencement of this case, collected said promissory notes, and wrongfully and unlawfully converted the proceeds thereof to his own use and benefit, and now refuses, and at the beginning of this case did refuse, to account for or pay over the proceeds of said promissory notes to this defendant, although this defendant has frequently demanded of him to do so. Wherefore this defendant says there is, and was at the commencement of this case, due and owing to him from said plaintiff on account of said notes and their proceeds by collections the sum of $1,000, with ten per cent interest thereon from said last named date, for which, with interest, he prays judgment against the plaintiff.

"5. That on or about the 15th day of April, 1889, he sold and conveyed to one Richard Colgraves a tract of real estate in Nebraska for the sum of $1,200, the said plaintiff transacting the business for him, and took in payment therefor the promissory note of said Richard Colgraves; that the said plaintiff, in transacting the business, wrongfully and without authority, took said note payable to himself and not to this defendant, with ten per cent interest per annum thereon, and has collected the same and applied

it to his own use and benefit, whereby he became and was indebted to this defendant in the sum of $1,500, which is, and was at the commencement of this suit, due and unpaid, and for which sum, with interest thereon, this defendant prays judgment against the plaintiff.

" 6. That the plaintiff is indebted to him in the sum of $1,300, with seven per cent interest thereon from the 14th day of July, 1887, for and on account of certain real estate situate in the old town of Newman Grove, Shell Creek precinct, Madison county, Nebraska, sold and conveyed by this defendant unto the plaintiff on or about the 14th day of July, 1887, at the instance and request of the plaintiff, which said real estate was then and is now of the actual value of $1,300, and which sum, with interest aforesaid, the said plaintiff then and there undertook and promised to pay to this defendant, but has hitherto wholly failed and neglected, and still fails and neglects, to pay, though the same is long past due, and is still the property of this defendant.

" 7. That each and all the matters and things herein pleaded arise out of the contract and transactions pleaded and set forth in the petition in this case, and are connected with the subject of this action.

" 8. Wherefore this defendant prays judgment against the plaintiff for the sum of $3,800, with interest and costs of suit."

Whereupon the plaintiff moved to strike out of the answer the following:

1. "And which was worth at wholesale prices at said time not to exceed the sum of $2,787, as the said plaintiff then and there well knew. Said stock of merchandise was at said time stored in a store-room, securely boxed and packed, and secure from examination or inspection by this defendant, except a few hundred dollars' worth of the best part thereof, which was displayed on the shelves of said store-room, and could be examined. Said stock of merchandise had been traded for by the plaintiff at Rising City, Ne.

braska, in the month of May, 1887, and at said time a pretended invoice of them had been made at their alleged wholesale value by some one to this defendant unknown, at the instance and request of the said plaintiff, which pretended invoice was wholly false, fraudulent, and untrue, and greatly in excess of the actual wholesale value of said merchandise, as the said plaintiff at the time of the transactions hereinafter stated and alleged well knew. That on or about the said 14th day of July, 1887, the said plaintiff began negotiating with this defendant for the sale to him of the said stock of merchandise, and then and there, for that purpose and to that end, falsely, fraudulently, and well knowing the same to be untrue, represented and stated to this defendant that said stock of merchandise was a first-class, fresh, A No. 1 stock of merchandise, free in all respects from any defects or impairments; that it had been purchased at wholesale less than a year prior to that time, and that he, the said plaintiff, would warrant the same in all respects as being a good, fresh, A No. 1 stock of merchandise; that all of said merchandise in boxes was as good as that displayed on the shelves, and that the latter was a fair sample of the former; and that he would warrant and guaranty to this defendant the correctness in all respects of said pretended invoice of said stock of merchandise, which said invoice he then exhibited to this defendant, showing said stock of merchandise to be of the wholesale value of $8,808.84, and stating and representing at the time to this defendant, fraudulently and falsely, and well knowing the same to be false and untrue, for the purpose of inducing this defendant to purchase said stock of merchandise, that said invoice was in all respects true and correct and genuine, and fairly represented the wholesale value of said stock of merchandise; that at said time that part of said stock of merchandise which was displayed on the shelves of said store building was the best part thereof, and was so displayed by the procurement of the plaintiff

to mislead this defendant, and induce him to believe that the part thereof in boxes was of the same quality and value; that, relying upon the truthfulness of the said several representations, statements, warranties, and guaranties so made to him as aforesaid by the plaintiff, and believing them to be true, and believing said part of merchandise in boxes was of the same quality and value as that part thereof displayed on the shelves of said store building," beginning in line 14 and ending in line 61 of said answer.

2. "Was induced thereby to purchase and," in line 62.

3. "The sum which the plaintiff had so falsely and fraudulently represented and stated to this defendant that said stock of merchandise was worth at wholesale value," in lines 64 to 66.

4. "That this defendant would not have purchased of said plaintiff said stock of merchandise, or made said payments or given said promissory notes, but for said false and fraudulent representations, statements, warranties, and guaranties of said plaintiff so made to him by said plaintiff as aforesaid, which he relied on and believed to be true at the time. This defendant alleges and charges the fact to be that each and all of said representations, statements, warranties, and guaranties so made to him by the plaintiff as aforesaid were when made and are now wholly false and untrue and fraudulent, and were known by the said plaintiff to be false, fraudulent, and untrue when so made, and they were made by the plaintiff for the sole purpose of misleading and defrauding this defendant into purchasing said stock of merchandise, and he was thereby induced to make such purchase and payments and give said promissory notes by reason thereof; that in truth and in fact the said stock of merchandise was not a first-class, fresh, A No. 1 stock of merchandise, and was not free in all respects from defects or impairments; but on the contrary the same was rotten, old, shelf-worn, unsalable, and a condemned stock of merchandise, and did not have mer-

13

Hovland v. Burrows.

chantable value to exceed the sum of $2,787, as the plaintiff
then and there well knew. That said stock of merchan-
dise had been purchased many years prior to the 14th day
of July, 1887, and consisted of condemned, defective, and
unsalable remnants and refuse articles of merchandise, as
said plaintiff at the time well knew; that said pretended
invoice was not a true, correct, or honest invoice of said
stock of merchandise, or the wholesale value thereof, as
said plaintiff then and there well knew, and the goods
in boxes were not of the quality or the value of those
displayed on the shelves, but were much inferior and of
but little value, all of which was to the plaintiff well known
and to this defendant unknown at the time of the making
of said contract of purchase," in lines 72 to 104.

5. "Designedly and fraudulently," in line 107.

6. "Fraudulently and designedly," in line 109.

7. "Discovered the said fraud that had been practiced
on him as aforesaid by the plaintiff, and annulled the said
contract of purchase of said stock of merchandise, and he,"
in lines 116, 117, and 118.

8. "And in consideration thereof," in line 119.
Because the same are redundant, scandalous, and irrelevant.
Which motion was sustained, and this is the first error as-
signed.

We think the court erred in sustaining the motion.
The matter set forth in the answer is a part of the trans-
action set up as a defense. Under the Code system of
pleading it is not necessary to state a cause of action or de-
fense in any particular form. The facts are to be stated.
All that the law requires is that there shall be a cause
of action or defense. It looks at the real rights of the
parties and aims at the protection and enforcement of
such rights. In the case at bar the defendant set up the
whole transaction by which he claims that he was de-
frauded. This he had a right to do, and the court should
not have stricken out a part of his defense. By doing so it

destroyed the whole.    The court also erred in withdrawing certain matters from the jury; but it is unnecessary to discuss that branch of the case.    As the defendant below was deprived of his defense, there must be a new trial.    The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.