GEORGE F. DICKSON ET AL. V. ROBERT STEWART.

FILED MARCH 17, 1904. No. 13,438.

1. **Trusts:** STATUTE OF FRAUDS. One who, by agreement, purchases
land at a foreclosure sale for the benefit of the owner of the
equity of redemption, at a price greatly below its value, can not
set up the statute of frauds against the party for whom he pur-
chased; the law will hold him to be a trustee *ex maleficio;* a court
of equity will not permit the statute of frauds to be made an in-
strument of fraud. *Ryan v. Dox,* 34 N. Y. 307, and cases there
cited.

2. **Deed as Mortgage:** PAROL EVIDENCE. Where a party acquires the
legal title by purchase of land at a sheriff's sale, in pursuance of
a parol agreement with a judgment debtor that he is to hold the
title thus obtained as a security for the loan of the money paid to
relieve the land from the judgment lien, and that he will reconvey

when the money is refunded, the case is not distinguishable from any other, where the deed though absolute in terms was designed simply as security for a loan; and parol evidence is admissible to show the transaction to be of that character. *Reigard v. Mc-Neil*, 38 Ill. 400.

3. **Contract:** MUTUALITY. Want of mutuality is no defense, even in an action for specific performance, where the party not bound thereby has performed all of the conditions of the contract and brought himself clearly within its terms. *Bigler v. Baker*, 40 Neb. 325.

4. **Action to Redeem:** LIMITATIONS. The right to foreclose and the right to redeem are reciprocal; and an action to redeem may be brought at any time before the statutory bar of ten years is complete. *Morrow v. Jones*, 41 Neb. 867.

5. **Interest.** The rule is well established that interest on a debt is computed up to the time of the first payment, and the payment so made is first applied to discharge the interest, and afterwards, if there be a surplus, such surplus is applied to sink the principal, and so *toties quoties* taking care that the principal thus reduced shall not at any time be suffered to accumulate by the accruing interest. *Mills v. Saunders*, 4 Neb. 190, followed and approved.

ERROR to the district court for Clay county: GEORGE W. STUBBS, JUDGE. *Reversed with directions.*

*J. L. Epperson & Sons*, for plaintiffs in error.

*George H. Hastings* and *L. B. Stiner*, contra.

FAWCETT, C.

On the 29th day of March, 1893, defendant in error, hereinafter styled plaintiff, was the owner and in possession of a farm of 160 acres of land in Clay county. A mortgage which he had given some years prior thereto had been foreclosed, and, on the day named, the farm was about to be sold by the sheriff under the decree of foreclosure in that case. Plaintiff alleges that, just before the opening of the sale, he called upon plaintiff in error, hereinafter styled defendant, and entered into a agreement with defendant whereby it was agreed and understood between them that defendant should bid in the land for plaintiff, pay for the same and take the title thereto in his own

name as security for the money so paid, and convey the same to plaintiff at any time that plaintiff should demand such conveyance, upon payment to him by plaintiff of any balance that might then be due and unpaid. That defendant, in accordance with this agreement, bid in the land for $1,960. That it was further agreed that defendant should place a mortgage on the land for $1,600, and a second mortgage for $120. That as additional security for his advances, defendant was to have the rents, issues and profits of the premises until he should be fully reimbursed; that when so reimbursed defendant and his wife were to make the plaintiff a good and sufficient deed to said premises, free and clear of all incumbrances excepting the two mortgages above described. That it was further agreed that the rents and profits arising from the premises should be applied: First, to the payment of taxes; second, to the payment of interest on said two mortgages; and, third, to the payment of the moneys advanced by defendant. That defendant has taken all of the rents and used the same, and refuses to render any account thereof, and refuses to convey said land to plaintiff, notwithstanding the fact that plaintiff stands ready and willing to make an accounting with defendant, and to pay any sum that may be due defendant. That plaintiff has many times during the past two years demanded a deed and accounting, which have been wholly refused. Wherefore, he prays that an accounting may be had; that defendant may be decreed to hold the title to said premises as trustee for plaintiff; that defendants be decreed to convey said premises to plaintiff in accordance with the terms of the agreement; that on failure to so convey, the decree stand as such conveyance; and for such other, further and additional relief as in equity and good conscience plaintiff ought to have. For answer defendants demur generally to the 4th paragraph of plaintiff's petition; deny all of the other allegations therein, and then allege that the defendants, nor either of them, nor any person authorized by them, or either of them, ever made or signed any mem-

orandum or note thereof, or any contract in writing for the sale of said land, or in any manner relating thereto, or for the transfer, granting, assignment or surrender of any interest therein to the plaintiff or to any other person; that neither of the defendants, nor any person authorized by them, or either of them, ever made or signed any note or memorandum in writing agreeing to make a conveyance or transfer of said land, or any interest therein to the plaintiff or any other person, and said alleged agreement was not, by its terms, to be performed within one year from the making thereof. Wherefore, they pray that plaintiff's petition be dismissed. Plaintiff's reply was a general denial.

The court below found generally for plaintiff, that the title to the land in question was taken by defendant as security for money advanced by him, with the express understanding that the same was to be reconveyed to plaintiff on the payment of the amount due, and that there is still due defendant from plaintiff $399.17, which is a lien on the premises in controversy; and, after stating the amount by items, the court adjudged that defendant have a lien upon the premises in controversy for the said sum of $399.17; that plaintiff pay said sum into court for the use of defendant, and that the defendants make to the plaintiff a good and sufficient deed to the premises within 30 days from the date of the decree, and, in the event of their failure so to do, that the decree should in all things operate, and be taken and construed as such deed of conveyance, and that plaintiff pay the costs of the action.

Counsel on both sides devote a great deal of space in their briefs to the discussion of express, constructive and resulting trusts—a very interesting field of discussion and one in which the writer would gladly accompany them if time would permit; but, as the only question to be determined in this case is the correctness of the holding of the district court that the deed in question was a mortgage, we feel constrained to confine this opinion to a discussion of that question alone.

There is no conflict in the evidence as to the making of the contract. Plaintiff testifies that on the day the sheriff was going to sell the property, and just prior to the opening of the sale, he called upon the defendant and said: "Now, Frank, I did a favor for you once and I want you to help me now. I want you to buy this place for me, and when I get the money I will redeem it. So Dickson bought the property. * * * Dickson was to buy the place for me, and when I got the money I was to give it to him; then he was to deed it back to me." The defendant himself testifies: "Well, at the time that this land was for sale, Mr. Stewart came to my office, and he told me that he wanted to buy this land at the sheriff's sale, but that he didn't have any money, or not enough money, to buy it; and that the sheriff said he would not take him, and that he advised him to come and get me to buy the land for him, and then Stewart said to me that he wanted me to go up and buy the land for him, as Davis, the sheriff, would take me, and that he, Stewart, wanted some one to buy the land that he could depend on." The court asked defendant the following questions:

Q. Now, was it your understanding, at the time that you bought this farm, that you were to buy it and hold it until Mr. Stewart could redeem it and pay you back the amount that you had paid out? Was that your understanding and intention?

A. Yes, sir, I was to buy it, to buy land for him.

Q. And hold it until he paid you back?

A. Yes, sir.

By General Hastings:

Q. You were to hold the land until it was redeemed, for your security?

A. Well, I think so, but I didn't think that it would run ten years.

In the light of this testimony we do not see how the trial court could have done otherwise than to find that the deed from the sheriff to the defendant, although absolute in its terms, was in fact a mortgage from the plaintiff

to the defendant as security for the money advanced by defendant.

Defendant contends that, the rule so frequently announced by this and other courts that a deed, though absolute upon its face, if intended as security, will be held to be a mortgage, does not apply in a case where the maker of the deed is a third party. In other words, that to have entitled plaintiff to rely upon this rule, he must himself have been the grantor in the deed, when, as a matter of fact, the grantor was the sheriff. We do not think the contention is sound. While the sheriff is the nominal grantor in the deed, yet, the interest which he conveyed thereby was the interest of the plaintiff. The plaintiff at that time was the owner of the fee and in possession of the premises, and the deed by the sheriff conveyed that ownership and right of possession to the defendant, so that, in effect, it was a deed from the plaintiff to defendant. It is further contended by defendant, that the contract was void because the relation of creditor and debtor was not created by the contract; that, if plaintiff failed to repay the money to defendant, defendant would have had no action against him for the recovery of the money. In other words, that the contract was void for want of mutuality. We are unable to agree with this contention, for two reasons: First, the relation of debtor and creditor was created. Under the same evidence which we have quoted from the record, defendant could at any time, after a reasonable time had elapsed, have demanded payment from the plaintiff, and, in the event of plaintiff's failure to pay, could have proceeded to foreclose his deed as a mortgage, with all the rights of any ordinary mortgagee. Second, this court has held in *Bigler v. Baker*, 40 Neb. 325, that "want of mutuality is no defense, even in an action for specific performance, where the party not bound thereby has performed all of the conditions of the contract, and brought himself clearly within its terms." In this case plaintiff had complied with his part of the contract. After entering into this agreement with defendant, he made no effort

to obtain the money elsewhere to redeem the property from defendant's bid; but allowed the sale to defendant for $1,960, of property which the undisputed evidence shows to have been worth from $3,200 to $3,500, to be confirmed, and a deed to be issued to defendant thereunder, and immediately delivered possession of the premises to defendant, relying upon the fact, as stated by defendant in his testimony, that defendant was a man "that he could depend on." Plaintiff had "performed all of the conditions imposed upon him, and brought himself clearly within the terms of the agreement." Hence, under the decision of this court in *Bigler v. Baker, supra,* if a want of mutuality had existed in this case, it would not be a valid objection to plaintiff's right to recover. While we concede that there is some conflict in the authorities upon this point, that conflict was considered by this court in *Bigler v. Baker,* and the rule above announced adopted as the true rule.

The next contention of defendant is that section 3, chapter 32 of the Compiled Statutes (Annotated Statutes, 5952), is a complete barrier to plaintiff's right to recover. Defendant must also fail in this contention. If defendant did in fact bid in the land for plaintiff under the agreement set out, he held it in trust for him, and had no other interest in it than that of a mortgagee to secure the repayment of the purchase money and other advances made by him. But if he had no intention of keeping his part of the agreement, and did not in fact intend to hold the property in trust for plaintiff, he was guilty of a fraud which the court will relieve against. The court has power to relieve against such fraud, and the means to be employed is to convert the person who has gained an advantage by means of his fraudulent act into a trustee for those who have been injured thereby. *Ryan v. Dox,* 34 N. Y. 307. Defendant relies upon section 3, chapter 32, Compiled Statutes, but he overlooks section 6 of the same chapter (Annotated Statutes, 5955), which reads as follows: "Nothing in this chapter contained shall be con-

strued to abridge the powers of the court of chancery to compel the specific performance of agreements in cases of part performance." And he also overlooks another very important proposition: That a court of equity will never permit a party to shield himself behind a statute of frauds in order to perpetrate a fraud. In the case of *Sanford v. Norris,* 4 Abb. Ct. App. (N. Y.) 144, the court say:

"The circumstances attending his purchase are not obscured in the least by any doubts, either as regards the facts or their moral bearing; nor is any excuse or apology offered for his violated faith; and the simple question presented to this court is, whether the fruits of his perfidy are secured to him by a law having for its object the prevention of frauds. It stands indisputably proved that the defendant obtained this title on the pretense that he was purchasing for Mrs. Sandford, as a friendly act to her, and under agreement with her that he would take and hold the title for her benefit. Having thus obtained the title himself, he claims and insists that he is under no legal obligation to carry out the arrangement, because it is not evidenced by a writing, and that he may violate the trust and confidence reposed in him with impunity. But the law will not give its aid in support of a wrong and fraud so flagrant. If the question could ever have been considered open for discussion, it must now be deemed settled by the recent decision of this court in *Ryan v. Dox,* 34 N. Y. 307, wherein the equitable principle is recognized as the established law of this state, that 'equity will at all times lend its aid to defeat a fraud, notwithstanding the statute of frauds.'"

The case of *Ryan v. Dox, supra,* considers this proposition at great length and quotes from a large number of cases, both in this country and England, all to the effect that a court of equity will never permit the statute of frauds to be used as a shield for the perpetration of a fraud.

Another contention of defendant is that, if plaintiff had a right of redemption, it should have been exercised within

a reasonable time; that so long a time has elapsed since the making of the agreement that plaintiff ought not now to be permitted to exercise the right of redemption. That matter has also been settled adversely to defendant, by this court, in *Morrow v. Jones,* 41 Neb. 867, in which it is held that the right to foreclose and the right to redeem are reciprocal, and that an action to redeem may be brought at any time before the statutory bar of ten years is complete. Citing *Seawright v. Parmer,* 7 So. (Ala.) 201; *Green v. Capps,* 142 Ill. 286; *Rogers v. Benton,* 39 Minn. 39, and cases there cited. It follows therefore that plaintiff was not precluded from maintaining this action by lapse of time.

Defendant relies with great confidence on *Walter v. Klock,* 55 Ill. 362, but, even if the supreme court of Illinois had not subsequently passed upon the same matters involved in that case, it would easily be distinguishable from the case at bar. As a matter of fact the supreme court of Illinois, in *Reigard v. McNeil,* 38 Ill. 400, has held:

"It has been held repeatedly that deeds, in form absolute, may be shown to be mortgages in fact. Courts are not estopped from looking into the facts and circumstances of such a deed, to ascertain whether it was not intended as a mere security for the loan of money. And parol evidence is admissible to show the transaction to be of that character. And where a party acquires the legal title by purchase at a sheriff's sale of land under execution, in pursuance of a parol agreement with a judgment debtor that he is to hold the title thus obtained as a security for a loan of the money paid to relieve the land from the judgment lien, and that he will reconvey when the money is refunded, the case is not distinguishable from any other where the deed, though absolute in terms, was designed simply as security for a loan."

And in *Walter v. Klock, supra,* that court say that the case they were then considering had no application to the facts in the case of *Reigard v. McNeil.* And, later, in *Klock v. Walter,* 70 Ill. 416, the court say:

"At the September term, 1870, this case was before this court, and is reported in 55 Ill. 362. * * * The evidence establishes beyond doubt that the whole transaction was for the benefit of complainant, and that she was to refund the money, with interest. It operated as a loan to her, and, under the terms of the arrangement, the purchase at the sale, by McCullom, operated as a mortgage. He was simply to hold the land until complainant could sell it, and pay the money, with interest. By the arrangement he took the legal title, but in equity a trust resulted to her." Citing *Reigard v. McNeil, supra,* and *Smith v. Doyle,* 46 Ill. 451, each being a case where a sheriff's deed was held on parol proof to be a mortgage. It will thus appear that the supreme court of Illinois, instead of favoring defendant's contention, is clearly in line with our holding in this case.

Defendant assigns five errors in the court's computation, all of which we have carefully considered. The court charged defendant with $30 for rent of pasture for the year 1894. This was error, as no rent was paid for the pasture that year. Defendant is charged with $146.71 and interest, for sand in 1897. This is not quite correct. The total amount is $146.30, and interest should only be charged on $140.20 from December 12, 1902. The court charged defendant with 400 bushels of corn in 1893, $80. The amount was only 300 bushels, $60, an error of $20. The court charged defendant with corn rental in 1896, $30. The evidence shows, and the parties agree, that there was a total failure of the crop for 1896 so that no rent was received for that year. We observe also that the court charged defendant with only $90 for 600 bushels of corn in 1895, instead of $120, an error of $30 the other way. The decree should be amended so as to correct these errors. Defendant also claims that the court erred in charging defendant with 500 bushels of corn for 1902, claiming that 500 bushels was the total crop and not the rent portion thereof; but by reference to question 12, record p. 97, it will be found that the 500 bushels of corn referred to was

31.

Dickson v. Stewart.

the rent portion of the crop; hence the finding of the court on that point is correct.

The court followed an erroneous rule in computing interest on the debits and credits. The rule is well established that "Interest on a judgment or debt due is computed up to the time of the first payment, and the payment so made is first applied to discharge the interest, and afterwards, if there be a surplus, such surplus is applied to sink the principal, and so *toties quoties*—taking care that the principal thus reduced shall not at any time be suffered to accumulate by the accruing interest." *Mills v. Saunders,* 4 Neb. 190, and *Davis v. Neligh,* 7 Neb. 78. This method the court did not adopt.

The decree fails to do complete justice to the defendant in another particular, namely: Before plaintiff would be entitled to a deed from defendant for the lands in controversy, he should not only pay the amount found due under the accounting of the court, as corrected by this opinion, but he should also relieve defendant from his liability on the $1,600 note and mortgage.

The case should be reversed and remanded to the district court, with directions to make another computation in harmony herewith, and to modify the decree so as to require plaintiff to pay the corrected amount and relieve defendant of his liability on the $1,600 note and mortgage, within a reasonable time to be fixed by the court; and that, upon such being done, defendant be required to reconvey; and we so recommend.

ALBERT and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded, with directions to that court to correct its computation and modify its decree to conform to the views expressed in said opinion.

JUDGMENT ACCORDINGLY.