JOSEPH M. SEDLAK, APPELLEE, V. FERDINAND DUDA, APPELLANT.

13 N. W. 2d 892

FILED APRIL 7, 1944. No. 31704.

*A. L. Tidd,* for appellant.

*Frank L. Frost* and *Frederick L. Wolff, contra.*

*Guy C. Chambers, amicus curiæ.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

Chappell, J.

Plaintiff filed this suit in equity to redeem from a mortgage foreclosure decree alleged to be void because the decree was rendered on defendant's cross-petition filed more than four months after answer day, without any issue of process or appearance of plaintiff, and the attorneys who took the decree for defendant against plaintiff and his wife, without their knowledge or consent, were admittedly their own attorneys, first employed by them to defend and protect their interests in the cause. Many pleadings were filed by defendant attacking plaintiff's petitions until the cause was finally at issue on plaintiff's third amended petition, defendant's answer, and plaintiff's reply. After hearing upon the merits the trial court at the March, 1943, term entered a decree finding and adjudging generally for plaintiff, except as to certain disputed items of accounting. Motions for new trial were filed by both parties, and thereafter the court on its own motion, during the same term, set aside its former decree and entered another more favorable to defendant. Motions for new trial were again filed and upon the overruling thereof defendant appealed and plaintiff cross-appealed to this court. Except as hereinafter modified in conformity with plaintiff's cross-appeal, we affirm the judgment of the trial court.

Defendant's chief contentions here are that the trial court erred in the following particulars: 1. Overruling paragraphs 1 and 2 of a motion filed by defendant December 19, 1942; 2. Permitting plaintiff to redeem without pleading and proving tender before suit; 3. Holding that the action was not barred by the statute of limitations; 4. Refusing to find that plaintiff was estopped to deny validity of the decree or to redeem; 5. Permitting plaintiff to recover rents and profits; 6. Awarding plaintiff the sum of $50 as costs and expenses for a handwriting expert necessary to prove the genuineness of certain documents, as provided by section 20-1266, Comp. St. 1929; and 7. In entering its last decree as the sequel of an alleged *nunc pro tunc* order.

By cross-appeal plaintiff contends that the trial court

erred: 1. In crediting defendant with improvements including costs of the original foreclosure action; 2. Refusing to charge defendant with interest on rents and profits; and 3. Refusing to credit plaintiff with certain payments of principal and interest.

The evidence and circumstances appearing in this record amply support the allegations of plaintiff's petition, which are in substance: That plaintiff is a man of limited education, unable to read English, and with no knowledge of law. That defendant Duda is his brother-in-law, and Dwyer & Dwyer were plaintiff's lawyers, upon whom he placed special reliance as to their superior knowledge, integrity, and duty to defend and protect him. That at all times since 1915 plaintiff and his wife were the owners of a valuable home in Plattsmouth, Nebraska, which since April 28, 1936, defendant has held in trust for plaintiff subject only to reimbursement to defendant of the balance unpaid upon a second mortgage for $812.50 at 5 per cent executed by plaintiff and wife on May 15, 1923, to secure a loan made by defendant. That plaintiff paid defendant on the principal thereof $50 on July 11, 1929, and $500 on May 12, 1930, which together with other admitted payments of principal and interest left a balance of $225.50 remaining unpaid on April 10, 1923, with interest at 5 per cent from that date, no part of which was due or delinquent until after April 10, 1934. That in 1920 plaintiff and wife executed a first mortgage on their home to the Plattsmouth Loan & Building Association, hereinafter called the Association, and on December 24, 1932, applied to it for an additional loan sufficient to pay defendant in full, which was granted upon condition that defendant release his second mortgage. That defendant was requested to execute such a release, whereupon he consulted Dwyer & Dwyer, plaintiff's attorneys, who requested plaintiff to come to their office where the attorneys, in defendant's presence, informed and instructed plaintiff that he should make no further payments to the association because he had already overpaid them, which they would prove by requiring the Association to bring their books into

court. That plaintiff complied with his attorneys' instructions, whereupon the Association filed foreclosure proceedings making plaintiff and wife and Duda et al. defendants. That upon receiving summons therein plaintiff immediately returned to his attorneys' offices where, in defendant's presence, the attorneys, with full knowledge that plaintiff's and his wife's interests were adverse to defendant, represented and promised that they would represent and defend both plaintiff and defendant Duda in the foreclosure suit, and protect and preserve the rights and interests of plaintiff and his wife in their home. Plaintiff alleges, however, that at all times theretofore and thereafter defendant and the attorneys, without plaintiff's knowledge or consent and without making full disclosure of facts to him, acted in concert and conspired together to wrongfully deprive plaintiff and his wife of their home for the benefit of defendant. That in pursuance thereof they first filed a general denial for plaintiff, his wife, and Duda, which was verified by defendant Duda. That later they filed an amended answer for plaintiff and wife denying generally the allegations of the Association's petition, alleging payment of the first mortgage in full, and praying that plaintiff Association's petition be denied. That more than four months after answer day, without any process ever issued and served on plaintiff and wife, who never made any appearance or had any knowledge thereof, the attorneys filed an answer and cross-petition for defendant Duda denying generally the allegations of the Association's petition, and alleging adversely to plaintiff and wife that there was then due and owing to defendant Duda on his second mortgage the sum of $812.50 with interest at 5 per cent from April 10, 1933, and praying foreclosure thereof, with notice and knowledge that such allegations were false. That the attorneys, who promised to represent and protect plaintiff and wife, did not file any answer for them to defendant's cross-petition, and, acting in concert with defendant, wrongfully deprived them of an opportunity to be heard or defend themselves against the cross-petition. That during the trial of this foreclosure action

the attorneys amended plaintiff's and wife's answer to the Association's petition and defendant's answer and cross-petition by interlineation, alleging the first mortgage to be void because acknowledged by a stockholder of the Association; and also in like manner they amended the prayer of defendant's cross-petition to ask that the Association's mortgage be adjudged void, be canceled of record, and title quieted against it; whereupon the Association asked to dismiss its foreclosure suit without prejudice, which was refused by the trial court. That defendant Duda and his attorneys then caused an absolutely void decree to be entered by the trial court on January 6, 1934, without plaintiff's knowledge or understanding, finding that Duda had a first lien on the property of plaintiff and wife for the sum of $845, and that such property should be sold as upon execution. That upon appeal to the supreme court by the Association (*Plattsmouth Loan & Bldg. Assn. v. Sedlak,* 128 Neb. 509, 259 N. W. 367), the trial court was reversed in its refusal to permit the Association to dismiss without prejudice, and on April 24, 1935, the trial court re-entered a void judgment on the mandate in favor of defendant Duda on his cross-petition. That thereafter defendant and the attorneys wrongfully and unlawfully sold the property of plaintiff and wife as on execution, whereat defendant Duda purchased the same for the bid of the judgment, later obtained confirmation of sale, on April 28, 1936, received a sheriff's deed therefor, and on May 12, 1936, wrongfully and unlawfully ousted plaintiff and wife from possession of their home. That since May 12, 1936, defendant Duda has wrongfully received and appropriated the rents and profits therefrom, the exact amount of which is unknown to plaintiff. That since that time defendant has denied that plaintiff has any right, title or interest in the property, has refused to negotiate with plaintiff or account for rents and profits, and has denied and prevented plaintiff's right of redemption. That plaintiff is ready, willing and able to pay, and offers to bring into court and pay any amount remaining due on defendant's second mortgage upon an accounting by the court.

Plaintiff alleges further that pursuant to, and as a part of, the conspiracy defendant, by his attorneys, but allegedly as attorneys for plaintiff, and without disclosing the facts to him, filed a separate action on April 27, 1935, after judgment on the mandate from this court, to quiet title to the premises in plaintiff and wife and declare the Association's mortgage void for want of lawful acknowledgment. That on April 1, 1938, almost two years after defendant had received a sheriff's deed and possession of the property, a decree was wrongfully obtained by defendant and the attorneys in the above action declaring the Association's mortgage void, canceling the same of record, and entering a personal judgment against plaintiff and wife for $1,680.28, all without notice to or knowledge of plaintiff until April 20, 1941. That as the result of such alleged conspiracy and wrongful conduct defendant has obtained plaintiff's valuable home for $225.50 and plaintiff has been left with a $1,680.28 judgment against him.

Plaintiff's second and third alleged causes of action by reference incorporated severally all the allegations of the first cause of action, amplified by alleged promises and representations by defendant and his attorneys that the defendant did not want the property, and that they would represent and protect plaintiff and deed the property back to him upon payment of the balance of the second mortgage, having at all times, however, the secret intention of never keeping the promises. Plaintiff prays for an accounting, the right to redeem, cancellation of the sheriff's deed, return of possession of the property to him, or in the alternative judgment for damages, and for such other and further relief as may be just and equitable.

Defendant's first contention that the trial court erred in overruling a part of his motion is without merit. It has long been the rule in this state that, " 'A motion may properly be overruled which cannot be allowed in substantially the same terms as requested.' " *Wiedeman v. Estate of Peterson*, 129 Neb. 74, 261 N. W. 150. The first paragraph of defendant's motion is that plaintiff be required to separately

state and number his causes of action praying for damages and redemption; and the second paragraph moves to eliminate from plaintiff's second cause of action all reference to the allegations contained in the first cause of action and to separately state and number his causes of action for cancellation of the sheriff's deed and redemption. It is elementary that equity having once obtained jurisdiction of a controversy for any purpose will retain it for all purposes, and render such decree as will protect the rights of the parties before it and do complete justice between them. While plaintiff's petition already contains three alleged causes of action as required by orders of the trial court, the applicable rule is that all facts which taken together are necessary to fix the responsibility for the injury complained of constitute but one cause of action although the prayer of the petition is for more than one kind of relief. See *Bailey v. Chilton*, 106 Neb. 795, 184 N. W. 939. A party has a right to plead his entire cause of action and when it consists of a series of acts and conduct which all taken together constitute one transaction, a portion of the same cannot be stricken out or eliminated by the court against objection.

Under our Code system, although proper and learned so to do, it is not necessary to state a cause of action in any particular form. The facts are to be stated in ordinary concise language without repetition, but all that the law requires is that there shall be a cause of action. A party has a right to plead the whole transaction by which he claims he was defrauded and the trial court has no right to strike out a part of his cause of action. See *Hovland v. Burrows*, 38 Neb. 119, 56 N. W. 800; *In re Estate of Wise, ante,* p. 273, 13 N. W. 2d 146.

In connection with defendant's second contention, we decide that plaintiff's petition stated a cause of action, and it was not necessary for plaintiff to plead and prove tender before suit. "The right of redemption after a sale on foreclosure as accorded by the statute in some states is distinct from the equity of redemption before the foreclosure sale. The former commences only when the latter ends. A valid

foreclosure destroys the latter and creates the former. One rests on the principles of equity, the other on the terms of the statute." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1660, sec. 1060. See, also, p. 1672, sec. 1070. "Where a person entitled to redeem under the statute is prevented from redeeming within the statutory period by the fraudulent representations or conduct of a person interested, a court of equity has power to set aside the deed upon the sale and to permit redemption after the expiration of the statutory period." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1822, sec. 1210. And, "Where a foreclosure sale under a mortgage * * * to the mortgagee * * *, directly or indirectly, is voidable, the owner of the equity of redemption is not foreclosed and may maintain an action to redeem; and where the mortgagee * * * goes into possession, he may require an accounting." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1697, sec. 1099.

Bearing these rules in mind, we find the law relating to tender in cases like the one at bar to be, that, "Where an action is brought in equity to redeem, the offer in the complaint (petition) to pay the amount found due to the creditor (mortgagee) is sufficient to support the action without a previous actual tender of the amount due." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1832, sec. 1215. And, "Where the person from whom redemption is sought has been in possession of the land and an accounting is necessary by virtue of his receipt of rents and profits, a tender by the plaintiff before bringing the action to redeem is unnecessary." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1834, sec. 1216. See, also, 2 Jones, Mortgages (8th ed.) 887, sec. 1400; 42 C. J. 404; *Clark v. Hannafeldt,* 79 Neb. 566, 113 N. W. 135.

The trial court did not err in holding that the plaintiff's cause of action was not barred by the statute of limitations. In *Dorsey v. Conrad,* 49 Neb. 443, 68 N. W. 645, directly in point here, this court said: "An action by an owner of the fee to redeem his land from a mortgage thereof which has been foreclosed, and to which foreclosure proceeding he was

not a party, or, if a party, not served with process, may be brought at any time within ten years after his cause of action accrued." It was also held in *Morrow v. Jones,* 41 Neb. 867, 60 N. W. 369: "The right to redeem and the right to foreclose are reciprocal, and an action to redeem may be brought at any time before the statutory bar of ten years is complete." See, also, *Dickson v. Stewart,* 71 Neb. 424, 98 N. W. 1085; *Clark v. Hannafeldt, supra.*

In conformity with the rule that, "An estoppel will not be predicated on a portion of the record and of the facts, but on the whole thereof" (31 C. J. S. 193, sec. 5), and bearing in mind that, "The right to redeem is a favorite of equity, and will not be allowed to be taken away, except upon a strict compliance with the steps necessary to divest it, and by due process of law" (3 Wiltsie, Mortgage Foreclosure (5th ed.) 1673, sec. 1071), we have searched the whole record and thus given consideration to defendant's contentions that plaintiff is estopped to deny the validity of the decree of foreclosure and to redeem. There are cases where persons seeking to redeem have been estopped by their own acts and conduct from exercising the right as against persons in good faith entitled to rely thereon, but these authorities have no similarity or application to the case at bar.

In *Rea v. Pierson,* 114 Neb. 173, 206 N. W. 760, this court gave approval to the language in 21 C. J. 1207, sec. 208, to wit: "In order to create an estoppel by the acceptance of benefits, it is essential that the party against whom the estoppel is claimed should have acted *with knowledge of his rights*; also that the party claiming the estoppel was *without knowledge or means of knowledge of the facts on which he bases his claim of estoppel, that he was influenced by and relied on the conduct of the person sought to be estopped, and that he changed his position in reliance thereon to his injury.*" (Italics supplied.)

The purpose of estoppel is to prevent inconsistency and fraud resulting in injustice. See 31 C. J. S. 192, sec. 1.

"A party may not properly base a claim of estoppel in his favor on his own wrongful act or dereliction of duty, on

fraud committed or participated in by him, or on acts or omissions induced by his own conduct, concealment, or representations.

"The doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it." 31 C. J. S. 281, sec. 75. This court has held that a void judgment is a mere nullity which neither affects, impairs, or creates rights, and that as to the person against whom it professes to be rendered it binds him in no degree whatever. It has no effect as a lien upon his property and it does not raise an estoppel against him. See *Minnesota Thresher Mfg. Co. v. L'Heureux*, 82 Neb. 692, 118 N. W. 565.

There is another more important reason, however, which bars the defendant from claiming the benefit of estoppel and retaining the benefits of the foreclosure litigation. The record discloses that the attorneys representing defendant had been plaintiff's attorneys in small matters for many years, and it is admitted that they were employed as attorneys to represent plaintiff and his wife in the particular litigation before the defendant employed them. The interests of plaintiff and defendant were unquestionably adverse, which makes applicable the rule announced by this court in *Zimmer v. Gudmundsen*, 142 Neb. 260, 5 N. W. 2d 707: " 'An attorney owes to his client an undivided allegiance, and after he has been retained by, and received the confidence of, a client, he cannot, without the free and intelligent consent of his client, given after full knowledge of all the facts and circumstances, act both for his client and for one whose interest is adverse to or conflicting with that of his client in the same general matter, however slight such adverse interest may be; nor is it material that the intention and motive of the attorney may have been honest.' 5 Am. Jur. 296, sec. 64." And, these rules are of utmost importance not only to lawyers but to litigants, since we here reaffirm that a litigant in a suit in equity will not be permitted to secure the fruits of a decree in his favor, obtained for him by an attorney whom he knows also represents his adversary in the subject matter before the court, without in

good faith making full disclosure of all the facts to such adversary. See *Baker v. Farnsworth*, 117 Neb. 504, 221 N. W. 17.

We turn now to the question of rents and profits, and hold that plaintiff was rightfully entitled to recover them. The general rule is that, "Where a sale to the holder of the mortgage is voidable, he is accountable for rents and profits. And where possession is not only wrongfully taken by the mortgagee, but accompanied by force and fraud, the mortgagee, on a suit to redeem, cannot be charged with less than the whole rental value during his possession." 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1860, sec. 1237. The trial court allowed $18 a month from May 12, 1936, to May 12, 1939, and $25 a month thereafter until the date of the decree as rental value, which we will not disturb here, and which we find and decide is a proper rental value until the date of judgment on the mandate herein. Further, we sustain plaintiff's second contention in the cross-appeal, since interest on rents and profits is properly allowable at the contract rate. See *Walter v. Calhoun*, 88 Kan. 801, 129 Pac. 1176. The rule is, however, that interest should not be charged upon rents and profits from the end of the year when they accrued, but rents and profits, less taxes paid, without interest on such taxes, should be first applied at the end of each year to extinguish the interest upon the principal for that year (beginning May 12, 1937), and if a balance of rents and profits remains thereafter it should be applied *pro tanto* to payment of the principal of the mortgage until extinguished, after which rents and profits, less taxes paid, shall draw interest from the end of each year at the statutory rate, until date of judgment on the mandate; and in this accounting the trial court shall not permit any interest to be charged upon interest. See 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1863, sec. 1238; *Kinkead v. Peet*, 153 Ia. 199, 132 N. W. 1095; *Dickson v. Stewart, supra.*

For clarity in connection with the accounting, we here discuss and sustain plaintiff's first contention on the cross-appeal. It was error to permit defendant to recover any

costs expended by him in the original foreclosure suit. See 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1875, sec. 1243; 2 Jones, Mortgages (8th ed.) 867, sec. 1388; *Jones v. Dutch,* 3 Neb. (Unof.) 673, 92 N. W. 735. The trial court also erred in permitting defendant to recover for improvements, the rule being, as stated in *Cram v. Cotrel,* 48 Neb. 646, 67 N. W. 452, "For the purpose of redemption a purchaser in good faith at the judicial sale, believing he has a good title, will be entitled to credit for improvements made upon the property; but one who buys with notice of the facts is not a purchaser in good faith within the meaning of the rule, and is not entitled to such credit" which distinguishes *Higginbottom v. Benson,* 24 Neb. 461, 39 N. W. 418, relied upon by defendant herein. See, also, *Jones v. Dutch, supra;* 3 Wiltsie, Mortgage Foreclosure (5th ed.) 1854, sec. 1234.

Defendant's contention that the trial court erred in taxing $50 costs against him as expenses for plaintiff's handwriting expert, as provided by section 20-1266, Comp. St. 1929, cannot be sustained. The amount of the expense is not in dispute. The record discloses that plaintiff made request in writing for admission of the genuineness of two receipts given by defendant to plaintiff for payments made upon the principal of defendant's second mortgage. The written request was served upon the attorney for defendant herein and upon Dwyer & Dwyer, his former attorneys, on September 9, 1942, after this action was commenced and more than two weeks after defendant and his counsel had obtained photostatic copies thereof. No admission of their genuineness was made by any of them in writing within four days or at any other time. At the time the expert was sworn as a witness counsel for defendant admitted the genuineness of defendant's signatures upon both the documents but refused to admit the matter appearing above the signatures. We find no good reason for the refusal to admit their genuineness as required by the statute. From the evidence and circumstances appearing in the record this court has no doubt of their genuineness, and affirmatively finds and decides that the payments of $50 on July 11, 1929,

and $500 on May 12, 1930, were made by plaintiff to defendant upon the principal as recited therein, which together with other admitted payments made by plaintiff left only a balance of $225.50 unpaid upon the second mortgage on April 10, 1933, which bears interest at 5 per cent from that date.

With reference to defendant's last contention, we find that the trial court had inherent jurisdiction and authority derived from the common law, and independent of statute, upon its own motion or otherwise, to vacate its first decree and render another at the same term. In *Lyman v. Dunn*, 125 Neb. 770, 252 N. W. 197, this court said: "In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgments at any time during the term at which they are rendered." See, also, *Bradley v. Slater*, 58 Neb. 554, 78 N. W. 1069; *Eager v. Blake*, 1 Neb. (Unof.) 852, 96 N. W. 74; 34 C. J. 207. The fact that the trial court used the misnomer "*nunc pro tunc*" in its order setting aside the first decree is entirely immaterial since the latter decree was entered at the same term and not for the purpose of extending the time for appeal but only in a sincere effort to enter a proper decree, which was more favorable to defendant than the first, and could not have been prejudicial to him in any manner.

We have heretofore affirmatively disposed of plaintiff's contentions on the cross-appeal, and we will not discuss them further.

The judgment of the trial court is affirmed in part, and in part reversed, and the cause remanded with directions to enter a judgment for plaintiff in conformity with this opinion, without adducing any further evidence except to determine the amount of taxes, if any, paid by defendant upon the property involved since the date of the trial court's decree.

AFFIRMED IN PART AND REVERSED IN PART,
WITH DIRECTIONS.