JAMES A. SNOKE, APPELLANT, v. ELLSWORTH J. BEACH, APPELLEE.

FILED SEPTEMBER 27, 1920. No. 20622.

1. **Mortgages: DEED AS MORTGAGE: INTENT.** "Whether a deed absolute on its face is a sale or a mortgage depends upon the intention of the parties, and such intention is to be gathered from their declarations and conduct, as well as from the papers which they subscribed." *Sanders v. Ayres*, 63 Neb. 271.

2. ———: PAROL EVIDENCE. "Where it is sought to vary the effect of a deed of conveyance by parol testimony so as to declare it to

be a mortgage, the evidence must be clear, convincing, and satisfactory in its nature in order to warrant a court to grant the relief prayed." *O'Hanlon v. Barry*, 87 Neb. 522.

3. ———: POSSESSION: RENTS. When it is established that a deed was in fact given as security only, the grantor therein stands in the relationship to the premises as mortgagor, and is entitled to redeem. In such case the mortgagor is entitled to the possession of the premises and to receive the rents and profits therefrom.

4. ———: EVIDENCE. Evidence examined, and transaction *held* to be one of security, and not an absolute sale.

APPEAL from the district court for Box Butte county: WILLIAM H. WESTOVER, JUDGE. *Reversed, with directions.*

*Boyd & Metz*, and *E. L. Meyer*, for appellant.

*Mitchell & Gantz*, contra.

DAY, J.

James A. Snoke brought this suit in equity against Ellsworth J. Beach to have a certain deed from the former to the latter declared to be a mortgage; that an accounting be taken of the rents and profits of the land; that he be let in to redeem; and that the defendant be required to reconvey the premises to the plaintiff. The trial court denied the plaintiff the relief prayed, and he has appealed.

The pleadings, as well as the evidence, present a clear-cut question as to whether the transaction is to be regarded as an absolute sale, with an option back to the grantor to repurchase the land, or a mortgage. A determination of this question involves an examination of the testimony in the light of well-settled legal principles applicable in such transactions.

The record shows that the plaintiff purchased the land in question in 1909. At that time there was a mortgage on it in favor of one Goedekin for $1,200. Later the plaintiff gave a mortgage on it to J. C. McCorkle for $1,500, and still later the plaintiff executed a third mortgage to the defendant for $600. The mortgage to Mc-Corkle had been assigned as collateral security to the

First National Bank of Alliance, Nebraska. At the date of the transaction now in question these three mortgages were past due, and upon two of them payment was being demanded and foreclosure proceedings threatened. At this stage of the proceedings a conference was held between McCorkle, Beach and Snoke, which resulted in Snoke executing and delivering to Beach a deed absolute in form, conveying the N. E. 1/4 of section 20, township 25 north, range 47, Box Butte county, Nebraska, and receiving back from Beach the contract hereafter mentioned. The consideration named was "one dollar and other valuable consideration." The actual consideration, however, was the payment by Beach of the mortgages upon the land, and the execution of the contract. While the deed bears date of November 7, 1914, and the contract two days later, there is no doubt but that the two instruments form part of one and the same transaction. Some of the testimony tends to show the instruments were in fact executed the same day, but in our view this is immaterial so long as they constitute but one transaction.

On the date of the delivery of the deed a contract was signed by Beach and Snoke, as follows: "11-9-14. I have this day received from James A. Snoke warranty deed to the N. E. 1/4 of section 20, township 25, range 47, Box Butte county, Nebr., for which I agree to sell back to the said James A. Snoke within one year from this date for $2,719.40 and 9 per cent. interest on this amount from this date, except I reserve the right to make private sale of this land within the year at the stipulated price of $22.50 per acre, and agree to pay James A. Snoke, in case I make such sale, all over and above the sum of $2,719.40 and interest and any and all expense I may have during this time, including any taxes I may pay. E. J. Beach. J. A. Snoke."

Pursuant to the arrangement, Beach paid off the Goedekin and McCorkle mortgages and canceled his own, and later filed of record releases for the three mortgages.

There is a sharp and irreconcilable conflict in the testimony of the two principals to the transaction. Snoke's testimony is to the effect that the transaction was one of security, and that he was to pay back to Beach $2,719.40 with interest at 9 per cent. in a year. In his testimony he says: "I gave him the deed with a contract that I was to have the privilege of redeeming the land." He told Hampton, who drew the contract, that "I gave him the deed for security," and in response to the question, "And you didn't tell Hampton that Beach had bought the land?" he answered, "No, sir; the land wasn't sold at all." McCorkle, who was present, corroborates Snoke. In his testimony, he says: "My understanding was that this was an extension of time given with the idea, that if I or Mr. Kibble or Mr. Snoke could sell the land so as to redeem it he would do it. * * * It was put up as security in the form of a deed; that was my understanding of it." The testimony of Beach corroborates his theory that the transaction was an out and out sale, that he did not want the land, but in order to protect himself and save costs he bought the land outright and gave Snoke the option to repurchase on the conditions named in the contract. The testimony of Hampton, the president of the First National Bank which held the McCorkle mortgage, tends strongly to sustain Beach's theory. He says, in substance, that Snoke was anxious to get a little money out of the land, and Mr. Beach didn't want to put that much money into it, so they entered into agreement, "which I tried to put in words, exactly as they stated it to me." He was then asked, "Now was there anything said about this deed being a mortgage?" to which he answered, "No, sir. * * * My understanding was that it was an absolute sale." The testimony shows that the amount of $2,719.40 mentioned in the contract was arrived at by computing the amount due upon the three mortgages, principal and interest, and deducting from that sum $120 which was paid by Snoke by an assignment to Beach of the rent for the year 1914. Upon this phase of the case Beach's testimony is to the

Snoke v. Beach.

effect that the $120 was paid to him for an option on the land. The effect of his testimony, however, on this point is very much weakened by cross-examination, which in the end rather tended to support the other witnesses as to the method of arriving at the figures $2,719.40.

There can be no doubt that the holder of a mortgage debt has the legal right, with the consent of the mortgagor, to accept an absolute deed to the mortgaged premises in full satisfaction and discharge of the debt, where such transaction is freely and voluntarily made, and is free from the vice of fraud or coercion. It is the policy of the law to encourage rather than to discourage the settlement of controversies by the parties out of court. It is also within the right of the parties to enter into a contemporaneous contract whereby the grantee in such deed agrees to resell the premises to the grantor upon the payment of a stipulated price and within a given time, and no legal impediment arises even though the amount named in the contract to reconvey is the same amount as the debt for which the deed was given in payment. Where, however, a dispute arises as to whether the deed and the contract speak the real transaction, and proof is offered tending to show that the deed was intended to be a mortgage, the fact that there was an antecedent debt existing and that the repurchase price named in the contract is the same amount as the mortgage debt with interest will be regarded as strong circumstances tending to show the transaction to be a mortgage. It is well settled that a deed and contract to resell, however positive and clear the terms may be, are subject to parol explanation, and that a court of equity in its effort to find the truth will look behind the form of the language used to determine the real transaction. Whether a deed absolute on its face is a sale or a mortgage depends upon the intention of the parties, and such intention is to be gathered from the declarations and conduct of the parties, as well as from the papers which they subscribe. *Sanders v. Ayres*, 63 Neb. 271; *Kemp v. Small*, 32 Neb. 318. The rule is also established in this state that, where it is sought to vary the effect of a deed

absolute on its face by parol testimony so as to declare it to be a mortgage, the evidence must be clear, convincing, and satisfactory before a court is warranted in adjudging it to be a mortgage. *O'Hanlon v. Barry*, 87 Neb. 522.

The value of the land as compared with the consideration paid for it is also an important factor to be considered in determining the true nature of the transaction. This of course is based upon the well-recognized trait of mankind to secure as nearly as possible a fair value for his property. While there is a sharp dispute upon the question of value, the weight of the defendant's testimony fixing it at $3,600 and that of the plaintiff from $4,000 to $4,500, we are inclined to the view that the value of the land as shown by the testimony was $4,000. The possession of the premises is also an important factor to be considered. In that respect the testimony shows that the possession of the premises was to be in Snoke, and in fact it is shown that an agent for Snoke rented the premises on a crop rent basis for the year 1915, taking the lease in Snoke's name. Later, however, in Snoke's absence, the landlord's share of the crop was delivered to Beach and appropriated by him. The agent of Snoke who had made the lease testified with respect to the 1915 crop as follows: "Before they got ready to thresh Mr. Beach came and asked me what I was going to do with the grain, and I told him Mr. Snoke wasn't here at the time, he was over in Colorado, and he wrote me to look after it; there was no granary to put it in, and Mr. Beach said, 'I will do this with you, I will take the grain from the machine, and if Mr. Snoke redeems the land I will owe him for the grain, and if he don't redeem the land the grain belongs to me.' I said, 'That is satisfactory to me,' and so Mr. Beach took the grain."

We cannot in the space proper to be given to an opinion quote from the testimony further, and must in the end give our conclusion as to what the testimony shows.

From a careful examination of the testimony and the circumstances surrounding the transaction, we have be-

come satisfied that the deed was given as security for a debt. What the parties attempted to do was to draft a contract in such form that, in the event Snoke failed to pay the amount with interest, the deed would stand as an absolute conveyance without the necessity of a foreclosure proceeding. Such an agreement, however thoroughly understood between the parties, does not change the legal aspect of the transaction. If in fact the deed was given as security, it became *ipso facto* in legal effect a mortgage, and the equitable right of redemption which attaches to a mortgage cannot be cut off by contract or understanding of the parties at the time the contract is made. "Once a mortgage, always a mortgage," has become one of the axioms of the law. Having determined the transaction to be in fact a mortgage, it follows that the plaintiff was entitled to the possession of the premises and to receive the rents and profits therefrom. The rents and profits for the entire period having been appropriated by the defendant, he should in an accounting be charged with the fair and reasonable cash rental value of the land. It appears, however, that for the year 1915 the plaintiff rented the land on crop rent basis, the proceeds of which, amounting to $85, was appropriated by the defendant. For the years 1916 and 1917 we find the reasonable cash rental value of the land to be $125 per annum. In the accounting the plaintiff should pay the sum of $2,719.40 with 9 per cent. interest from November 9, 1914, together with any taxes paid by the defendant, with interest at 7 per cent. from the date of the several payments, and the reasonable value of any improvements which the defendant may have placed on the premises since the trial. As against this, there should be credited $85, with interest from January 1, 1916; $125, with interest from January 1, 1917, and $125, with interest from January 1, 1918. The court is directed to take further testimony as to the cash rental value of the land for the crop years of 1918, 1919, and 1920, and from the several amounts strike a balance of the amount due from the plaintiff, and enter a decree finding the deed to be a mortgage, and provide that within

20 days from the entry of the decree the plaintiff shall pay the amount so found due into court for the defendant, and that, 'on so doing, the title to the land shall stand quieted in the plaintiff; the costs of the proceedings to be taxed to the defendant.

REVERSED; WITH DIRECTIONS.

MORRISSEY, C. J., and ALDRICH, J., not sitting.