JOHN DORAN ET AL., APPELLEES, V. FARMERS STATE BANK OF YORK: E. J. DEMPSTER, APPELLANT.

FILED FEBRUARY 6, 1931. No. 27470.

C. M. *Skiles,* W. W. *Wyckoff,* I. D. *Beynon* and *Albert S. Johnston,* for appellant.

*Thomas & Vail, George M. Spurlock, W. L. Kirkpatrick* and *Gilbert & Gilmore,* contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ.

PER CURIAM.

This is an action to cancel a deed executed by plaintiffs and conveying to the Farmers State Bank of York 480 acres of land, to quiet title to said lands in plaintiffs, and for other relief.

In the amended and supplemental petition it is alleged that plaintiffs are husband and wife; that in 1922, while plaintiff John Doran was a stockholder, director and president of the Farmers State Bank of York, he executed a written guaranty, guaranteeing to the bank payment of certain specified notes, then constituting part of the assets of the bank, and that said instrument was without consideration; that thereafter, and in 1925, when the bank was in financial difficulties, plaintiffs executed a deed to the land in question, as security for the said guaranty, and that this deed was executed and delivered upon the condition that it should not be operative until one Myers, also a stockholder in the bank, should secure or pay to the bank certain notes and obligations of members of Mr.

Myers' family; that the condition was never complied with and that the deed was therefore inoperative.

The receiver of the defendant bank answered, admitting the execution of the guaranty, the execution and delivery of the deed, together with another instrument outlining the purpose and the conditions under which the deed was made and delivered, and that the deed was absolute and delivered for the purpose of taking up and canceling certain assets of the bank on which members of plaintiff's family were liable, and which Mr. Doran had previously guaranteed. Another defense was that of *res judicata,* which we think it unnecessary to consider.

The trial court found adversely to the plaintiffs on the question of conditional delivery, but found that the deed was intended between the parties to operate as a mortgage; that it was given to secure a liability guaranteed by the plaintiffs, but that the guaranty was without consideration, and that, therefore, the deed operating as a mortgage secured nothing and should be canceled. The defendant receiver has appealed, and the plaintiffs have cross-appealed.

The first question for consideration is whether or not the court erred in holding that there was no consideration for the contract of guaranty. The contract is as follows:

"I, John Doran, for and in consideration of one dollar in hand paid the receipt of which is hereby acknowledged and in consideration of my being president of the Farmers State Bank, of York, Nebraska, and in consideration of the duties so implied, I hereby guarantee the said Farmers State Bank, of York, Nebraska, against any loss whatsoever that may ultimately accrue to said Farmers State Bank, of York, Nebraska, by reason of said bank carrying certain notes among its assets and numerated below.

"It is understood and I hereby agree that this guarantee shall extend to and cover any renewal or extension of time upon said numerated notes, it being my intention and desire to protect said bank against loss on said notes after all chattels or other assets have been exhausted that

they may be made to apply on same, not to exceed a term of six years.

"It is a part of this guarantee and my desire that it shall extend to and be obligatory on my heirs, executors, administrators and assigns.

"In witness whereof I have hereunto set my hand and seal this 4th day of April A. D. 1922.

"(Signed) John Doran."

The above instrument is duly acknowledged, and attached thereto is a list of promissory notes referred to in the guaranty. There are 13 of the notes, aggregating in amount approximately $35,000. However, the guaranty extends only to 50 per cent. of the amount of some of the notes.

From the record it appears that Mr. Doran was the officer who took these notes into the bank, and that the state banking department had found that these notes were of doubtful value and had ordered them out of the bank. The following appears in the testimony of Mr. Doran: "Q. You took these notes into the bank when you were manager of the bank? A. Yes, sir. * * * Q. The banking department had ordered those out, had they not? A. They had become objectionable; yes, sir. Q. That's the reason you signed the guaranty, was it, partly? A. Yes, sir; they were objectionable and they wanted me to sign a guaranty." This was in 1922, and the bank was kept open for a period of three or four years thereafter, with Mr. Doran in charge as the principal officer of the bank. It also appears that at the time of the execution of the guaranty Mr. Doran owned 180 shares of the bank's stock, and that after the guaranty was executed he purchased 71 shares, paying approximately $130 a share therefor.

The bank had a capital of $50,000, so that at the time of the execution of the deed Mr. Doran owned more than 50 per. cent. of the capital stock. It is evident that if the amount of paper involved in the guaranty, aggregating approximately $35,000, was worthless or of little ·value, and the department of trade and commerce was insisting

that such paper be removed from the assets of the bank, or secured, the bank would soon be closed and placed in the hands of a receiver, unless the paper was removed from the assets and good securities substituted therefor, or otherwise secured. By executing the guaranty and securing the worthless or doubtful paper, Mr. Doran averted the calamity of a failure of the bank, together with the resulting loss to stockholders and perhaps to the depositors and creditors of the bank, and was enabled to keep the bank open as a going concern, with the hope and expectation that it would be solvent and become a profit-earning institution. The fact that he subsequently purchased 71 shares of stock at a substantial price evidences his belief in the then solvency of the institution, and that it would be profitable to keep the bank open as a going concern. By securing the paper, it enabled him to retain his position as president of the bank and to receive the salary therefor, and avoid his constitutional double liability as a stockholder if the bank had failed and its assets were insufficient to satisfy all creditors. We think these facts constituted a sufficient consideration for the execution of the guaranty.

Similar questions have arisen in other courts, and particularly in the state of Iowa, and that court has held that in contracts of guaranty of this nature, given by officers, directors and stockholders, guaranteeing paper of doubtful value for the purpose of keeping the bank open as a going concern, such facts constituted a valuable consideration. *In re Estate of Prunty,* 201 Ia. 670; *Hills Savings Bank v. Hirt,* 204 Ia. 940; *Andrew v. Farmers & Merchants State Bank,* 205 Ia. 712; *Boyd v. Miller,* 230 N. W. (Ia.) 851.

Three and one-half years later, or in the autumn of 1925, when the bank was in financial difficulties, Mr. Doran wrote to the secretary of the department of trade and commerce, asking the department to send some one to take charge of the bank and see if it could not be put in better condition. Pursuant to this request, the depart-

ment sent out Mr. McWhorter to take charge of the bank. After going over the condition of the bank, he reported to Mr. Doran that a large volume of paper was worthless or of doubtful value, and that the bank could be saved only by taking this paper out of the bank or having it properly secured. Thereupon it was arranged that Mr. Doran should convey to the bank, subject to prior incumbrances, 480 acres of land in York county. On the 23d of December, 1925, a deed was prepared and delivered to Mr. McWhorter for the bank. Accompanying the deed was the following instrument, prepared by the attorney for Mr. Doran and signed by Mr. and Mrs. Doran, the plaintiffs:

"York, Neb. December 23, 1925.
"To The Farmers State Bank of York, Neb.

"We hereby deliver to you a deed to the (here follows description of land) executed by us and delivered this day to the Farmers State Bank of York, Neb., under this agreement and with this understanding that said deed is an absolute conveyance to said bank of said premises. You are authorized to handle said property as your own and to sell and dispose of the same at the best price and upon the best terms which you can obtain therefor, and to apply the proceeds thereof in paying off and liquidating the indebtedness upon which John Doran is liable to said bank as guarantor. The indebtedness of J. T. M. Doran, generally known as Mel Doran, for which John Doran is liable as guarantor to be first paid out of the proceeds derived from the sale of said premises. Any proceeds thereafter remaining is to be applied on the other indebtedness for which John Doran is liable to said bank, and if any surplus then remains, the same is to be paid to John Doran and Mamie E. Doran.

"We acknowledge the valid consideration for said deed, and as a part of the consideration therefor, it is understood and agreed that said bank shall not take any judgment against John Doran for any of said indebtedness within ninety days from this date, and shall not here-

after commence any action against him during said ninety days to recover any of said indebtedness, and with the further understanding that said bank shall never assert any claim against our home in York, Neb. for any indebtedness now owing said bank by John Doran.

> "(Signed) John Doran,
> "Mamie E. Doran."

Mr. McWhorter immediately thereafter listed this real estate, so conveyed, on the books of the bank as a part of its assets, and removed from bills receivable notes that had been guaranteed by Mr. Doran, aggregating approximately $30,000, placed them in an envelope and left them in the bank. Shortly thereafter Mr. McWhorter, for the bank and pursuant to the purported authority in the foregoing instrument, advertised the land for public sale. Before the sale was consummated, however, plaintiffs brought an action to enjoin the sale and the consummation thereof, and, as grounds for the action, alleged that the bank was not to sell the land except at a price which was satisfactory to or approved by plaintiffs; that they had not been consulted in the matter; that no price was fixed for the sale of the land, and that the land was about to be sold at much less than its actual and real value. That action was settled and dismissed, and no sale was ever effected by the bank.

At the time Mr. McWhorter examined the bank he found that a considerable amount of paper in the bank was of doubtful value and on which members of the Myers family were liable, and that Myers was also a stockholder and director of the bank. It is the contention of plaintiffs that the deed, when executed and delivered, was upon the condition that Myers should take out or secure the paper in the bank on which members of the Myers family were liable, that the deed was not to be operative until this was done and the Myers paper was taken up or secured.

The evidence upon this question, as to conditional delivery, is in conflict. The trial court found against the plaintiffs in this respect. It would serve no useful pur-

pose to detail the evidence. Suffice it to say that after a careful examination thereof we are convinced that the holding of the trial court is supported by a preponderance of the evidence. The written instrument accompanying the deed was prepared by plaintiffs' attorney and purports to set forth all the conditions and terms on which the deed was delivered. Had the delivery of the deed been conditioned, as now claimed by Mr. Doran, it is amazing that so important a matter was not included in the instrument accompanying the deed. It is also significant that such fact was not pleaded in the petition for an injunction or in the original petition in this action. From the record we find, as did the trial court, that the deed was not delivered upon the condition now asserted.

We are unable to agree with the contention of defendants that the deed was to operate as an absolute conveyance. From the instrument accompanying the deed, it clearly appears that when the land should be sold the proceeds were to be used in paying off and liquidating the indebtedness upon which Mr. Doran was liable as a guarantor, and that if any proceeds should thereafter remain the same were to be paid to the plaintiffs. Clearly, the deed was intended to operate as security for the fulfilment of the guaranty and not as an absolute conveyance.

The conclusions reached on these questions render it unnecessary to consider any other of defendants' assignments of error.

The only assignment of error of plaintiffs relates to the fact that they were not awarded possession of the land by the decree of the trial court. Since the plaintiffs were not entitled to possession, as we have heretofore found, of course there was no error committed in that respect.

The judgment of the district court is reversed, with directions to the trial court to dismiss plaintiffs' action and to grant to the receiver of defendant bank, if he so elects, leave to amend his pleading so as to ask foreclosure of the deed as a mortgage.

REVERSED.