RODOLPHY M. CAMPBELL ET AL., APPELLEES AND CROSS-APPELLANTS, v. THE OHIO NATIONAL LIFE INSURANCE COMPANY, APPELLEE, IMPLEADED WITH I. W EBERHART, SUCCESSOR TRUSTEE, REVIVED IN THE NAME OF THE OMAHA NATIONAL BANK OF OMAHA, NEBRASKA, AS SUCCESSOR TRUSTEE, APPELLANT AND CROSS-APPELLEE.

74 N. W. 2d 546

Filed January 27, 1956. No. 33837.

654

*Joseph T. Votava* and *Armstrong & McKnight,* for appellant.

*Albert S. Johnston* and *Lee Kelligar,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

There are two tracts of land involved in this case. One is the east half of the northeast quarter of Section 14, Township 6 North, Range 13 East of the 6th P. M., in Nemaha County. This will be spoken of herein as tract 1. The other is the northeast quarter and the northeast quarter of the northwest quarter of Section 15, Township 6 North, Range 13 East of the 6th P. M., in Nemaha County. This will be referred to herein as tract 2. The land was for many years prior to the early part of 1938, the exact time does not appear, owned by Rodolphy M. Campbell, designated hereafter as Campbell, subject to a mortgage on each tract securing an indebtedness owing by him to the Ohio National Life Insurance Company, which will be herein described as the company. There were defaults in performance of the obligations of the mortgages and the company insisted that the defaults be removed. Campbell in the spring of 1938 had negotiations with the company concerning an extension or renewal of the mortgages and the indebtedness secured by them. The company refused to do either because of the age of the debtor and the length

of time that the loans had existed but it suggested that if the land was conveyed to Albert S. Johnston and his wife the company would consider accepting their notes and mortgages for the amount of the principal and arrearages represented and evidenced by the existing notes and mortgages securing them. On September 30, 1937, the land was conveyed to Albert S. Johnston and Juanita L. Johnston, the son-in-law and daughter of Campbell, who are hereafter designated as appellees. They executed and delivered to the company a note dated June 20, 1938, payable to its order for the sum of $6,800 with interest thereon at 5 percent per annum from May 1, 1938, and secured its payment by mortgage of that date on the land above described as tract 1. The last installment of the note matured May 1, 1948. Appellees also executed and delivered to the company a note dated June 20, 1938, payable to its order for the sum of $16,200 with interest thereon at 5 percent per annum from May 1, 1938, and secured its payment by a mortgage of that date on the land above described as tract 2. The last installment of the note matured May 1, 1948. The aggregate of the principal of the notes given by appellees was the amount of the indebtedness of Campbell to the company and secured by mortgages on the land at the time it was conveyed by Campbell to appellees and the conveyance of the land to them was made subject to it.

Appellees had not satisfied all the requirements of the notes and mortgages they gave the company and about March 1, 1940, it solicited and requested appellees to execute an instrument designated "TENDER OF CONVEYANCE," and an unconditional and absolute warranty deed of each of the tracts of land as prepared and furnished by the company and to deposit them with it. The purposes of these were to satisfy and discharge the indebtedness represented by the notes and secured by the mortgages of appellees to the company and to vest in it an absolute and unconditional title to and pos-

session of the land. Appellees refused to do this.

There were additional conferences and negotiations between them and the company and these culminated in a transaction expressed in and evidenced by a letter written on behalf of the company dated May 21, 1940, signed by O. F. Neal as a manager of the company addressed to Albert S. Johnston, and conveyances of the land in the form of warranty deeds, one for each tract of land, in which O. F. Neal was named grantee, executed and delivered by appellees in reliance upon and because of the terms and conditions expressed in the letter. The contents of the letter are quoted:

"Agreeable with my telephone conversation this morning, I enclose deeds to be executed by you and your wife, to myself, for the above land. These deeds are taken with the understanding that all income received from the land shall be credited to the loans; and if at any time prior to March 1st, 1942 you are able to place the loans in current position, or sell the land and pay them off, I will re-deed the land to you or your order. Also, please assign the present leases to me and return with the deeds.

"Personally, I feel sure this is the best solution for all of us, for if Mr. Campbell is to realize anything from his equity, I think he will have a much better chance doing so if the property is not under foreclosure.

"I have instructed our attorney to hold the papers that were sent out yesterday until further notice. Will appreciate your executing and returning the deeds and assigned leases immediately."

The land and the loans referred to in the letter were identified by the following appearing at the top of it: "M. Ls. Nos. 6142-6149." The deeds were executed, the leases of the land were assigned as the letter requested, and they were on May 24, 1940, transmitted to "Ohio National Life Ins. Co., 19th & Douglas Sts., Omaha, Nebraska." The assignment endorsed on each of the leases was to O. F. Neal of all the rents reserved in the lease to be applied on the loan secured by a mortgage

on the land described in the lease. The letter of Albert S. Johnston that accompanied the deeds and leases when they were sent to the company identified the loans on the land by the numbers given them by it and stated: "Pursuant to our correspondence I enclose herewith the deeds to the property involved in these loans on the forms which you sent me with your letter of May 21, 1940. I also inclose the original of the leases covering this property with assignment to you endorsed on the back of each. * * * We will continue to keep track of the farming operations as heretofore."

Albert S. Johnston continued to manage the land, to collect the rentals from it, and he remitted the amounts collected to the company for a period of about 2 years after the conveyance of the land from appellees to O. F. Neal. He executed and delivered quit claim deeds of the land, in accordance with the intention and expectation of the parties, to the company on May 12, 1942. The deeds from appellees were for the benefit of the company and O. F. Neal was only an intermediary. He had no personal interest in the transaction. The writing of May 21, 1940, quoted above made by the company, the owner and holder of the indebtedness secured on the land, and the conveyance to it of the land and the leases thereon by appellees, the owners of them, in accordance with the terms of the writing of the company, were the transaction.

Instruments made in reference to and as a part of a transaction should be considered and construed together as one instrument in determining their effect and the intention of the parties. Hanks v. Northwestern State Bank, 143 Neb. 204, 9 N. W. 2d 175, declares: "Where two or more instruments are made at the same time with reference to the same transaction and to effectuate the same purpose, they will be construed together to the same extent as though made in one instrument." See, also, Ashbrook v. Briner, 137 Neb. 104, 288 N. W. 374; Northwestern State Bank v. Hanks, 122 Neb. 262, 240 N.

W. 281. It is not important that the instruments were made or dated at different times. They related to, were a part of, and constituted the transaction.

It is quite universally recognized that equity in interpreting a transaction between individuals and determining their rights regards the substance and not the form and that the particular form or words of a conveyance are unimportant if the intention of the parties can be ascertained. Ashbrook v. Briner, *supra*. It is also generally accepted that if an instrument executed by parties is intended by them as security for a debt, whatever may be its form or name, it is in equity a mortgage. This doctrine proceeds from the broad equitable principle that equity regards substance and not form. It may be said as a general rule that if an instrument transferring an estate is originally intended between the parties as security for money or for any other encumbrance, whether the intention is exhibited by the same instrument or by any other, it is considered in equity as a mortgage. Northwestern State Bank v. Hanks, *supra;* Annotations, 79 A. L. R. 937, 155 A. L. R. 1104. This jurisdiction adheres to the doctrine alluded to in the foregoing discussion and it has been made the policy of the state by legislative declaration. Section 76-251, R. R. S. 1943, provides: "Every deed conveying real estate, which, by any other instrument in writing, shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage. * * *" This court has frequently and consistently accepted and applied this doctrine in the decision of cases appropriate for its application. It said in Doran v. Farmers State Bank, 120 Neb. 655, 234 N. W. 633, that: "A deed, absolute on its face, but which, in fact, was given as security for certain obligations, and by which grantors were to receive any sum over and above such obligations for which the land conveyed should be sold, is, in nature and effect, a mortgage."

The writing of the company set out above provides that if the grantors in the deeds in controversy within a period of about 2 years from the date the deeds were made paid on the loans secured on the land sufficient to satisfy any unpaid past due amounts or if they during that period sold the land and paid the whole of the indebtedness the land would be re-deeded to them. The plain and unequivocal effect of the transaction was that the company would not during the period mentioned above take any action to enforce payment of the indebtedness of the grantors. Appellant agrees this conclusion is correct. In either of the contingencies mentioned appellees were to have any value of the land above the indebtedness secured thereon. The decision last quoted is precisely applicable to this litigation in favor of appellees.

The writing of the company was, when its terms were accepted and acted upon by appellees, a contract of defeasance. It and the deeds under the circumstances of this case must be construed together as a single instrument. When that is done the necessary result is that the deeds were not conveyances of absolute title but they were in legal effect mortgages and the grantors retained all the rights in relation to the land of mortgagors. Ashbrook v. Briner, *supra,* asserts: "A deed, absolute in form, given as security for the payment of money, passes the legal title to the grantee. * * * Where such deed is accompanied by defeasance in writing, the legal title does not pass to the grantee, and the transaction constitutes a mere mortgage." The opinion in that case contains the following: "Here we have two instruments executed as a part of the same transaction, to wit, a warranty deed and a contract of defeasance, and it has been held that, where two instruments are made at the same time with reference to the same transaction and to effectuate the same purpose, they will be construed together to the same extent as though made in one instrument. Standard Oil Co. v. O'Hare, 126 Neb. 11, 252 N. W. 398. * * * In this state the usual form of mortgage

differs but slightly from the wording of the two instruments executed in this case, if the same are construed together and treated as one instrument; and so construing them, it is apparent that the parties intended the conveyance as a mortgage and not as a transfer of the legal title with the right of redemption. * * * Particularly is this true in view of the provisions of section 76-228, Comp. St. 1929 * * *." The section referred to is now section 76-251, R. R. S. 1943, the first sentence of which is quoted above. The last sentence of the section is this: "The person for whose benefit such deed shall be made shall not derive any advantage from the recording thereof, unless every writing operating as a defeasance, or explaining its effect as a mortgage, or conditional deed, is also recorded therewith and at the same time." The opinion then proceeds: "In the instant case there was such other instrument in writing which clearly shows that the conveyance was intended only as security in the nature of a mortgage, and James W. Price, when he recorded the deed, did not record the defeasance contract. If we were to hold that the deed conveyed the legal title, we would be, in effect, ignoring the above provision of the statute, which states that, under the circumstances existing in this case, 'though it be an absolute conveyance in terms, shall be considered as a mortgage;' and giving James W. Price an advantage from the recording thereof in violation of the statute just quoted."

The trustee of the trust created by Owen Fletcher Neal, who was the same person as O. F. Neal mentioned above, and others for the benefit of the child or children of William R. Neal by a trust agreement of October 9, 1941, is referred to hereafter as appellant or by name.

Appellant grudgingly and with impressive indefiniteness concedes that during the time from the giving of the deeds in May 1940 until March 1, 1942, "* * * it is recognized that the Johnstons still had some equitable interest in the land." It is indubitably true then that the

deeds when made and delivered did not convey and were not intended to transfer the absolute fee title of the land to the company and that the literal terms of the deeds may not be accepted as expressing the true intention and contract of the parties. Appellant does not claim that the parties had any understanding or made any agreement after May 1940 that changed or modified the effect of their transaction had at that time. Whatever "equitable interest" the grantors had in the land by virtue of the transaction of May 1940 they have continued to have. The record shows nothing to take it from them. The remark of this court in Riley v. Starr, 48 Neb. 243, 67 N. W. 187, a case of the class of the instant one, is convincingly pertinent. The court there said: "* * * if (the deed was) intended as a mortgage when executed, its character as such will not be changed by the mere effluence of time."

Appellant argues that the letter of the company of May 21, 1940, establishes that the parties understood and intended that upon the expiration of the term granted the mortgagors, that is on March 1, 1942, the deeds were to be an absolute conveyance of the land and that the mortgagors were then to cease having any interest in it. Appellant admits that the deeds made by appellees to the company were executed and delivered in accordance with and because of the letter of the company of May 21, 1940. There is no claim or proof that there was any other or different agreement of the parties concerning the deeds. Appellant has not attempted to specify what language in the letter he claims was intended to provide that on March 1, 1942, if appellees had not put "the loans in current position" or had not paid the loans on the land in full the deeds made by appellees to the company should become and be an absolute conveyance of the land in fee to it. The letter contains no such terms. Appellant has not produced any authority that says that such an agreement would have been valid or binding if made. That argu-

ment has been repudiated by this court. It is unsound and ineffective. First Nat. Bank of David City v. Sargeant, 65 Neb. 594, 91 N. W. 595, 59 L. R. A. 296, speaks to this point: "A deed absolute in form will be treated as a mortgage when it is given to secure payment of a debt, although the parties may have agreed that upon default of payment the deed should become absolute." In State Bank of O'Neill v. Mathews, 45 Neb. 659, 63 N. W. 930, 50 Am. S. R. 565, this language is used: "As we have said, the conveyance from McLean to Mathews must be treated as a mortgage, and this notwithstanding the fact that McLean testifies that the agreement was that if the first note was not paid the deed should become absolute. This was the understanding and is the legal effect of all mortgages, and the whole doctrine of foreclosure and redemption arose from courts of equity relieving against this understanding and its legal effect." In Snoke v. Beach, 105 Neb. 127, 179 N. W. 389, the court said: "* * * we have become satisfied that the deed was given as security for a debt. What the parties attempted to do was to draft a contract in such form that, in the event Snoke failed to pay the amount with interest, the deed would stand as an absolute conveyance without the necessity of a foreclosure proceeding. Such an agreement, however thoroughly understood between the parties, does not change the legal aspect of the transaction. If in fact the deed was given as security, it became ipso facto in legal effect a mortgage, and the equitable right of redemption which attaches to a mortgage cannot be cut off by contract or understanding of the parties at the time the contract is made. 'Once a mortgage, always a mortgage,' has become one of the axioms of the law."

The status of appellees and the company toward each other as debtors and creditor continued after their transaction on the same basis and to the same extent without change or modification in any respect as it existed immediately before that transaction. The company had and continued to hold and own the same notes. The

mortgages given to secure the notes when they were made continued in force and effect. The letter of the company of May 21, 1940, conclusively establishes that the relationship of the parties toward each other as debtors and creditor was to continue, otherwise the language thereof "that all income received from the land shall be credited to the loans * * * if at any time prior to March 1st, 1942 you are unable to place the loans in current position," or if you "sell the land and pay them (the loans) off" is meaningless and absurd. Copies of the notes placed in evidence on the trial of the case failed to show any endorsement or cancellation of either of the notes or any part of them. In Riley v. Starr, *supra,* it is declared: "The true test in determining whether a conveyance absolute in form should be treated as a sale or as a mortgage is whether the relation of the parties toward each other as debtor and creditor continues. If it does so continue, the transaction will be treated as a mortgage and the conveyance as a security only." See, also, Samuelson v. Mickey, 73 Neb. 852, 103 N. W. 671, on rehearing, 73 Neb. 856, 106 N. W. 461; Harrah v. Smith, 79 Neb. 51, 112 N. W. 337; Fahay v. State Bank of O'Neill, 1 Neb. (Unoff.) 89, 95 N. W. 505.

The essence of the agreement of the parties was that appellees would make conveyance of the land and assignment of the leases thereon to O. F. Neal; that all income from the land should be applied on the loan secured thereon by mortgages made to the company by appellees; that the company would take no action to enforce payment or satisfaction of the indebtedness of appellees prior to March 1, 1942; and that if appellees had before that date placed the "loans in current position" or had paid the loans in full the company would "re-deed the land" to appellees. The company thereby got an assignment of the total income from the land to apply on and reduce the indebtedness of appellees to it and in practical effect gained control of the title of the land until the company was free to take action to enforce payment of the in-

debtedness if appellees failed to perform either of the two contingencies. It is clear that it was the intention and agreement of the parties that the indebtedness of appellees to the company should continue and the relation of the parties to each other as debtors and creditor was not terminated.

It is recognized that grantors in this kind of a case must produce evidence that is clear, convincing, and satisfactory. O'Hanlon v. Barry, 87 Neb. 522, 127 N. W. 860; Snoke v. Beach, *supra;* Cox v. Young, 109 Neb. 472, 191 N. W. 647. Appellees have satisfied this requirement. It must be and is concluded that the deeds of the land from appellees to the company were given and received as security for the indebtedness of appellees and that they are in legal effect and must be considered and treated as mortgages.

The answer of I. W. Eberhart as the trustee who succeeded Carroll Lewis, the original trustee of the Neal trust above described, asserts that he is a bona fide purchaser for full value of the land and that he received title thereto by warranty deed from Carroll Lewis, trustee, without any knowledge of any claims, rights, or equity of redemption of appellees. There is no allegation in the answer that Carroll Lewis, trustee, was a good faith purchaser of the land for value without notice of any existing interest or equity claimed or owned by the appellees. The evidence is that Carroll Lewis, trustee, conveyed the land to I. W. Eberhart as successor trustee but that no consideration for the conveyance passed between the parties to the deed.

Appellant contends that appellees did not prove by the greater weight of the evidence that the trustee was not a good faith purchaser of the land for value without notice of any claim of an outstanding equity in third parties. Appellees were not required to do so. The responsibility of establishing that defense was upon the trustee. The burden of proof is upon the litigant who alleges that he purchased the property for value and

without notice. Pfund v. Valley Loan & Trust Co., 52 Neb. 473, 72 N. W. 480; Dundee Realty Co. v. Leavitt, 87 Neb. 711, 127 N. W. 1057, 30 L. R. A. N. S. 389; Justice v. Shaw, 103 Neb. 423, 172 N. W. 253.

A good faith purchaser of land is one who purchases for valuable consideration paid or parted with without notice of any suspicious circumstances which would put a prudent man on inquiry. Miller v. Vanicek, 106 Neb. 661, 184 N. W. 132; Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749.

I. W. Eberhart, trustee, offered no evidence of his alleged defense that he was an innocent purchaser of the land for value without notice. The original trustee said that O. F. Neal suggested the purchase of the land for the trust and that he directed the purchase of it from the company; that the trust agreement provided that the creators of the trust reserve a right to make changes in investments, to change trustees, "* * * or just about anything they might want to do, except revoking the trust"; that he, the trustee, had no recollection of the amount that was paid the company for the land; that he had known O. F. Neal for a great many years; that Neal was manager of the office of the company at Omaha; that I. W. Eberhart succeeded the original trustee July 1, 1947; that Lloyd Peterson, an attorney at Nebraska City, examined the abstracts of title to the land and rendered an opinion concerning the title; that the trustee had no information about any other transaction affecting the land or of any claim of appellees to or affecting it; that there was no amount passed between them when the original trustee transferred the land to I. W. Eberhart as successor trustee; and that O. F. Neal handled the getting of the abstracts and the correspondence with the company concerning the purchase of the land for the trust up to the time the deed of the land was surrendered to the original trustee.

The company only contracted to furnish the original trustee a special warranty deed conveying its right,

title, and interest in and to the land. The deed the trustee got from the company had no habendum clause and following the description it recites the company covenants to warrant and defend the premises against any acts of the company.

Appellant agrees that notice includes information, knowledge, or possession of facts sufficient to put one on inquiry. A purchaser of real estate is required to take notice of instruments properly placed of record in the office of the register of deeds. If any irregularity or circumstance is exhibited by the record that is unusual a purchaser is charged with notice of the facts which would be disclosed by making proper inquiry. Increased diligence, alertness, and scrutiny in searching for the facts are expected of a purchaser who accepts a deed that is less than a general warranty with full covenants of ownership and title. The public records of the county showed the conveyance of the land to appellees; the mortgages given by them to the company; the conveyances by appellees to O. F. Neal dated May 24, 1940, and recorded August 30, 1940; an oil and gas lease of each of the tracts of land to Harry Mellor executed and acknowledged December 12, 1940, by appellees and executed and acknowledged by O. F. Neal and his wife January 2, 1941, and filed for record respectively on January 8 and January 29, 1941; and a waiver of all rights in the oil and gas lease on tract 2 executed and acknowledged by lessors as above stated and filed for record January 21, 1941. O. F. Neal, the grantee in the deeds from appellees, recognized that they had some interest in the land described in the leases and the waiver. The leases and the waiver were executed more than 6 months after the date of the deeds of appellees to O. F. Neal. He concedes in this litigation that appellees then had an equitable interest in the land. The trustee had for many years been well acquainted with O. F. Neal and knew that he represented the company in charge of its western division with offices in Omaha.

The foregoing facts were sufficient to advise a prospective purchaser of the land that O. F. Neal recognized that the grantors had more than 6 months after the deeds to him an interest in the land of a character and extent that it was necessary and proper that they be joint lessors of the land with him. An ordinarily prudent person would have been put on inquiry as to what interest appellees claimed or had or what interest O. F. Neal considered they had in the land. The trustee was obligated to make such an inquiry in a proper manner. A proper inquiry would have developed the facts upon which appellees prosecute this litigation.

The trustee says he relied upon Lloyd Peterson, the attorney who reported on the abstracts of title to the land. The attorney made several exceptions to the record title and required corrections including in one instance a suit to quiet title. The one requirement made by the examiner that was complied with was a release of the mortgages on the land held by the company and this was not done until more than 6 months after the sale of the land to the trustee had been completed. The deed from the company to the trustee was dated July 9, 1943, and was recorded September 28, 1943. The releases of the mortgages were dated January 18, 1944, and were filed February 4, 1944. It was O. F. Neal and not the trustee who disregarded the title opinion of counsel. This is confirmed by a letter from Lloyd Peterson to the trustee to the effect that O. F. Neal asked the attorney to write to the trustee "that you may proceed with the closing of the deal." I. W. Eberhart, trustee, did not sustain his defense that he was an innocent purchaser of the land for value without notice.

The district court conducted two trials in disposing of this case. The issue as to whether or not the deeds made by appellees to O. F. Neal were given as security and were in legal effect mortgages was tried and determined first with the acquiescence of all parties to the litigation. The court found and adjudicated that the

deeds referred to above were for security only although they were absolute in form and that the trustee was not a good faith purchaser of the land from the company for value without notice. The court ordered that a trial be had at a later date to determine the amount that appellees should pay to redeem the land. The company and the trustee filed a motion for a new trial. The company also filed a motion requesting that it be dismissed from the case because of the determination that had been made by the court. The court ordered a dismissal of the case with prejudice as to the company. That order has become final.

The judgment that the deeds from appellees to the company were mortgages, that the trustee was not an innocent purchaser from the company, and that appellees were entitled to redeem the land was rendered February 3, 1953. The company and appellant filed a joint motion for a new trial February 11, 1953. It was not considered by the court until April 19, 1955, when it was denied. The notice of appeal was filed April 28, 1955. Appellees claim that the motion for a new trial could not have been sustained as to both of the parties to the motion since the company was by the court dismissed with prejudice from the case on June 1, 1954, and the order of dismissal became final. Appellees conclude that the judgment of February 3, 1953, is not before this court for review. A dismissal in effect is equivalent to a nonsuit, and, in practice, also imports the same thing as a discontinuance, namely that the cause is sent out of court. The dismissal with prejudice of the company from the case took it out of court and all pending matters therein were thereafter, as far as the company was concerned, the same as if it had never been a party to the case. Temple v. Cotton Transfer Co., 126 Neb. 287, 253 N. W. 349. There was at the time the court considered and overruled the motion for a new trial only one party to the motion. The motion had

ceased because of the dismissal of the company to be a joint motion for a new trial.

This action is not barred by lapse of time or laches. Any action to enforce satisfaction of the indebtedness secured on the land was postponed until March 1, 1942, by the letter of May 21, 1940, written by O. F. Neal to Albert S. Johnston and what the parties did because of the letter. The amended petition in the pending case upon which it was tried was filed less than 10 years after March 1, 1942. The right to redeem is a favorite of equity. An action to redeem and one to foreclose are reciprocal and either may be had at any time before the statutory bar of 10 years. The statute of limitations does not begin to run in favor of a grantee in possession against an action to have a deed, absolute in form, established as a mortgage until the possession of the grantee becomes adverse to the title of the grantor. Sedlak v. Duda, 144 Neb. 567, 13 N. W. 2d 892, 154 A. L. R. 490. The grantee in the deeds given by appellees and the company knew the facts of the transaction of which the deeds were a part and the appellant was charged with knowledge of facts which put him on inquiry and if pursued would have informed the trustee of the facts upon which appellees rely in this case for the relief they seek. Appellant would have appellees placed in a disadvantageous position in the litigation because they did not have the letter of May 21, 1940, filed for record and recorded with the deeds they gave to O. F. Neal for the benefit of the company. This was the duty of O. F. Neal and the company before any benefit from the recording of the deeds could be derived by either of them. § 76-251, R. R. S. 1943. It has been determined that appellant when he took a deed of the land from the company had notice of the facts. The established omission of appellees is that they delayed taking action in court to have adjudicated the facts of the transaction of which all other parties concerned had knowledge or notice. The circumstances of the case do

not permit a denial of relief to appellees on the basis of their alleged laches. The defense of laches is an equitable one and to prevail the lapse of time and the relation of the defendant must be such that it is inequitable to permit plaintiff to have the relief he seeks. The defense is untenable to defeat an equity cause if there has been no material change in the position of the defendant. Schurman v. Pegau, 136 Neb. 628, 286 N. W. 921. The defense of laches is not a favored one and it will be sustained only if the litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary. Langdon v. Langdon, 104 Neb. 619, 178 N. W. 178. The question of laches is decided on the circumstances of each case. Harrison v. Rice, on rehearing, 78 Neb. 659, 114 N. W. 151; Schurman v. Pegau, *supra.*

Appellant asserts that he acquired all the rights of the company by virtue of the conveyance by it to the original trustee and the conveyance from him to appellant and that in deciding the amount appellees must pay as a condition of their redemption of the land there must be included therein the amount of the unpaid indebtedness represented by the notes secured by the mortgages given by appellees to the company. The record shows that this indebtedness was on May 1, 1942, the sum of $24,000 and that no part thereof has since been paid except the amount of the net income from the land. The appellees insist that appellant may recover only the amount paid by the trustee to the company for its conveyance of all its interest in the land with interest thereon at 6 percent per annum less the amount of the net income from the land. The amount the trustee paid the company was $15,400.

The argument of appellees is that appellant has not attempted to establish that he was a purchaser of the indebtedness owing the company and evidenced by the notes and secured by the mortgages given it by appellees; that the company contracted to sell and convey to the

trustee only the right, title, and interest the company had in the land; that the deed of the company to the trustee recites that the land was free of encumbrance; that the company released the mortgages of record and the releases state that the indebtedness secured by the mortgages had been paid; that the record is silent as to any intention of the company to sell or the trustee to buy the indebtedness; that the notes or mortgages were not transferred, assigned, or delivered to the trustee; and that the trustee makes the claim that it is probable that the notes were surrendered by the company to appellees though the proof is that it is not known what disposition the company made of them. Appellees conclude that appellant, who is in legal effect a mortgagee in possession of the land, may not recover more than the amount the trustee paid the company with legal interest less the net income from the land.

The trustee became the equitable owner of the indebtedness evidenced by the notes and secured by the mortgages given by appellees by virtue of the deed from the company to the trustee. The deed by its terms conveyed all the interest the company had in and to the land to the trustee. Section 76-104, R. R. S. 1943, declares: "An otherwise effective conveyance of property transfers the entire interest which the conveyor has and has the power to convey, unless an intent to transfer a less interest is effectively manifested." This court said in an early case, Eiseley v. Spooner, 23 Neb. 470, 36 N. W. 659, 8 Am. S. R. 128: "Every conveyance of real estate passes all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." See, also, National Bank of Commerce v. Lefferdink, 110 Neb. 275, 193 N. W. 916.

In Currier v. Teske, 82 Neb. 315, 117 N. W. 712, the facts were that Campbell was a mortgagee of land owned by Currier. The mortgage was foreclosed and Campbell was the successful bidder for the land at the sale. The foreclosure sale to Campbell was confirmed but the

sheriff made a deed to Herman Schmideke and he took possession of the land. This was done by virtue of an arrangement between Schmideke and Campbell which did not appear of record. There was no assignment of the bid of Campbell to Schmideke. The record showed no fact that entitled Schmideke to have the deed made by the sheriff. An heir of the mortgagor brought ejectment to recover the land and the possession thereof from the successors of Herman Schmideke. It was claimed the foreclosure proceedings were ineffective because the plaintiff in the ejectment suit had succeeded to the title of the premises but he was not a party to the foreclosure proceedings. The court concluded: "The net result of the foreclosure proceeding was that Schmideke paid and Campbell received the full amount of the mortgage, and in equity Schmideke would become the owner of the Campbell mortgage. His position, therefore, after he had obtained possession of the land, was that of an equitable mortgagee in possession." The rehearing reported in 84 Neb. 60, 120 N. W. 1015, 133 Am. S. R. 602, concerns matters not referred to in the foregoing.

Leavitt v. Bell, 55 Neb. 57, 75 N. W. 524, was brought by Leavitt to secure foreclosure of liens evidenced by tax sales certificates. The certificates were purchased by and were issued to Leavitt who during the pendency of the action by quit claim deed transferred his interest in the real estate by virtue of his tax sales certificates to Byron R. Hastings. He subsequently transferred his interest by quit claim deed to George D. Cook. He filed a supplemental petition alleging that he had purchased the tax sales certificates for all the liens on the real estate by virtue of the certificates including taxes subsequently paid. A decree was rendered in favor of George D. Cook. The court said: "We think, therefore, that Cook had the equitable title to the Leavitt certificates of tax sales and as such equitable owner he might maintain this action." See, also, First State Bank of

Herrick v. Conant, 117 Neb. 562, 221 N. W. 691; Criswell v. McKnight, 120 Neb. 317, 232 N. W. 586, 84 A. L. R. 1361; Cather v. Damerell, 5 Neb. (Unoff.) 175, 97 N. W. 623; McLean v. McCormick, 4 Neb. (Unoff.) 187, 93 N. W. 697; Ford v. Axelson, 74 Neb. 92, 103 N. W. 1039.

When it is established that a deed, absolute in form, was intended as a mortgage the relative rights of the parties is determined by the law governing the relation of mortgagor and mortgagee. § 76-251, R. R. S. 1943; Snoke v. Beach, *supra;* Doran v. Farmers State Bank, *supra;* Ashbrook v. Briner, *supra;* State Reserve Bank v. Groves, 125 Kan. 661, 266 P. 42; 59 C. J. S., Mortgages, § 57, p. 97.

The right of redemption is an inherent and essential characteristic of a mortgage, though not expressed therein, and whatever the form of a transaction it is, if intended as security for money, a mortgage to which the right of redemption attaches. The grantor in a deed intended as security for a debt, as in the instance of an ordinary mortgagor, has a right to redeem by paying the amount intended to be secured and may claim the right at any time before it is barred. Snoke v. Beach, *supra;* Sedlak v. Duda, *supra;* Northwestern State Bank v. Hanks, *supra;* Ashbrook v. Briner, *supra;* Brown v. Hermance, 233 Iowa 510, 10 N. W. 2d 66; Barr v. Granahan, 255 Wis. 192, 38 N. W. 2d 705, 10 A. L. R. 2d 227. A grantor asking the aid of equity to declare a· deed, absolute in form, to be a mortgage, is subject to the rule that he who seeks equity must do equity and accordingly he must honor the obligations that would be imposed upon him as a mortgagor. The grantee of a deed adjudged to be for security only and in fact a mortgage may, by a deed to another, transfer such interest as he has. If an absolute conveyance is intended as a mortgage it will retain its character in the hands of each subsequent purchaser who takes the property with notice of the rights of the parties. In any event, however, the

grantee of one to whom an absolute deed has been given as security for a debt, even if he took with notice, is a mortgagee whose interest may not be divested without discharging the mortgage. In Northwestern State Bank v. Hanks, *supra,* the court said: "It is equally well settled that if an instrument executed by parties is intended by them as security for a debt, whatever may be its form, or whatever name the parties choose to give it, it is, in equity, a mortgage. * * * Where the mortgagor avails himself of the right of redemption under a mortgage with the defeasance clause, the only thing required of him to do is to pay the debt." See, also, Swinson v. Sodaman, 300 Ill. App. 31, 20 N. E. 2d 623; Handrub v. Griffin, 127 Kan. 732, 275 P. 196; Robbins v. Blanc, 105 Fla. 625, 142 So. 223; 59 C. J. S., Mortgages, § 67, p. 107; 3 Wiltsie on Mortgage Foreclosure (5th Ed.), § 1217, p. 1836.

It has long been recognized in this jurisdiction that though proceedings had to foreclose a valid mortgage on real estate are void the mortgagor may not attack the title acquired through the foreclosure proceedings unless he offers to pay the amount of the indebtedness secured by the mortgage as found by the decree of foreclosure. It is said in McCabe v. Equitable Land Co., 88 Neb. 453, 129 N. W. 1018: "If a valid real estate mortgage has been foreclosed, even though the proceedings are void, the mortgagor will not be heard to question the title acquired thereby unless he pays or tenders the amount of the debt and interest."

Currier v. Teske, 93 Neb. 7, 139 N. W. 622, made reference to McCabe v. Equitable Land Co., *supra,* and other similar decisions and commented as follows: "The extent to which these cases go is that the foreclosure, though void * * * operates as an assignment of the mortgage foreclosed, and that the mortgagor cannot question the regularity of the decree as to one in possession under such foreclosure, without attempting to redeem."

The validity and effectiveness of the instruments ex-

ecuted by appellees have not been put in issue. The indebtedness they were incident to has not been wholly satisfied. It is inescapable that appellees must pay to or for the benefit of appellant the indebtedness with interest represented by the notes they gave the company less the net amount of income from the land and any interest legally due thereon as a condition of enlisting the benefit of equity to accomplish a redemption of the land.

Appellees remained in possession of the land and leased it for the crop years 1940 and 1941. The company advised appellees by letter dated April 28, 1942, that it had rented the land for 1942 as shown by leases prepared and negotiated by it and that it would collect all future rental for the land. The company did not consult appellees concerning this and did not have their consent for the company to take possession of the land, lease it, and collect the rentals from it. The acts of the company in this respect were thereafter until it conveyed its interest therein to the trustee without authority of law and were hostile to appellees. Likewise the acts of the trustee relative to the land after the conveyance to him were wrongful and hostile to appellees. The deeds from them to the company were accompanied by defeasance in writing. These were mortgages and the grantors had and retained all the rights of mortgagors. The legal title to the land did not pass to the company. It had only liens thereon. The assignment made by appellees on leases to the company was of the rental only. Ashbrook v. Briner, *supra;* Northwestern State Bank v. Hanks, *supra;* Higginbottom v. Benson, 24 Neb. 461, 39 N. W. 418, 8 Am. S. R. 211.

The original trustee constructed what he characterized as "a nice chicken house" on the land at a cost of $747.23. He also built a new hog house and outdoor toilet on the land at a cost of $329.69, and a corn crib and granary at a cost of $1,238.50. It is true that some used material was utilized in the construction of the corn crib but in

fact these were new, permanent improvements on the land and they were not in any proper view repairs. The successor trustee expended for work done on the land in October 1950 for what was intended to be a drainage system the sum of $1,795.50. This was after the trustee had knowledge that appellees claimed a right to redeem the land and that they were seeking an accounting of the income from it. The trustee did not consult with appellees concerning the work proposed to be done or the expense of it. There was also an expenditure by the trustee of $480.52 for similar work done on the land in the fall of 1949 and the spring of 1950. The trustee claimed compensation for overseeing the land from May 1, 1942, to December 1, 1954, in the sum of $2,780.76. There was included in the accounting had to determine what appellees should pay to appellant to redeem the land an item of $662.51 of interest on interest. The trial court permitted a deduction of each of the above seven items from the gross income of the land for which appellant was required to account. The action of the court in this regard is the subject of the cross-appeal of appellees in this case.

It has been concluded from what is said above that appellant or his predecessor in trust was not an innocent purchaser of the land. They each acted with notice of the facts. The improvements constructed on the land were not made under any pretense or claim that the trustee as mortgagee in possession was exercising his right to preserve the estate from deterioration. He was stoutly denying the right of appellees therein and asserting an absolute title to the land in the trustee. The mortgage agreement was repudiated and a claim of ownership of the land in fee was made adverse to appellees. The company took possession and dominion of the land without legal right in 1942 and in June 1950 when appellees requested an accounting of the income therefrom and suggested that they could probably pay the balance due the company expressed surprise and advised appellees

that their right in the land expired March 1, 1942, and that they had no rights in it or the income therefrom. Appellant about a month later informed appellees that there was nothing to negotiate about and that it was the position of the trustee that appellees had no right, title, or interest in the land that they conveyed to the company by deeds in 1940. Appellant makes that identical contention in this appeal. The possession of the company and the possession of the trustee and all that was done on the land or concerning it by them were acts hostile to the title of appellees. Appellees are not required in this action upon any principle of law or equity to account to appellant for the cost or value of the improvements made on the land. These under the circumstances of this case were made by the trustee to enhance, as he thought, the value of the land which he maintained was owned in fee by the trust. He abandoned buildings on the land and constructed new ones. He undertook to build and maintain an expensive drainage and flood protection system as advised by the soil conservation agency after the trustee had knowledge of the claims of appellees and their desire to redeem the land without advising or consulting with them except to tell them they had lost their interest in the land. Appellant speaks of what was done on the land as repairs. If they may be considered in any sense as repairs they are of that extraordinary and extensive kind not contemplated by the law within the rule that a mortgagee in possession may generally make ordinary repairs to preserve the estate. There is substantial unanimity of the authorities that a mortgagee who takes possession of realty without foreclosure is not entitled to any reimbursement for permanent improvements made by him. Such a mortgagee occupies the land of another and he has no more authority to dictate improvements to the owner after taking possession than he had before. If a mortgagee is not satisfied with the situation he may foreclose his mortgage and sell the property. He may not

by making improvements render it more difficult or impossible for the mortgagor to redeem. In White v. Atlas Lumber Co., 49 Neb. 82, 68 N. W. 359, this court said: "A mortgagee of real estate in possession before foreclosure, in the absence of an express or implied agreement upon the subject, is not entitled to any credit for permanent improvements made by himself, but he is liable for the net rents and profits which he has received, or which he might have received by the exercise of reasonable care." See, also, Sedlak v. Duda, *supra;* Cram v. Cotrell, 48 Neb. 646, 67 N. W. 452, 58 Am. S. R. 714; Jones v. Dutch, 3 Neb. (Unoff.) 673, 92 N. W. 735; Kinkead v. Peet, 153 Iowa 199, 132 N. W. 1095; Caro v. Wollenberg, 83 Or. 311, 163 P. 94; 3 Wiltsie on Mortgage Foreclosure (5th Ed.), § 1234, p. 1854.

Appellant with some reservation concedes that the original trustee and the successor trustee "* * * probably were in the status of mortgagees in possession * * *." A mortgagee in possession but who claims ownership hostile to the mortgagor is not entitled in an accounting for rents and profits from the land to credit for compensation for services rendered by him in managing or supervising the real estate encumbered by the mortgage. Any such services rendered must be considered as having been done for the benefit of the mortgagee. It is stated in Caro v. Wollenberg, *supra,* that: "While the mortgagee is in possession of mortgaged realty his attentions to the matter are in his own interest, and he cannot collect pay for services rendered for himself." The foregoing is approved in Murray v. Wiley, 180 Or. 257, 176 P. 2d 243, 170 A. L. R. 169, by this language: "Mortgagees in possession, on accounting to mortgagor who exercised his right of redemption, were not entitled to credit for compensation paid to one of mortgagees for managing the mortgaged property." See, also, Investors Syndicate v. Smith, 105 F. 2d 611; 2 Jones, Mortgages (8th Ed.), § 1449, p. 940; 36 Am. Jur., Mortgages, § 314, p. 846.

The accounting had in the trial court included interest on unpaid interest or compound interest in the amount above stated. This was incorrect. In the accounting there should not be any interest charged upon interest. Sedlak v. Duda, *supra*.

In determining the amount appellees should be required to pay to redeem the land the trial court was in error in the respects above stated. The amount of each of the seven items discussed in the foregoing should be eliminated and appellant should not have the benefit of any of them.

The judgment rendered February 3, 1953, should be and it is affirmed. The judgment rendered April 19, 1955, should be and it is reversed and the cause is remanded for further proceedings in harmony with this opinion.

The costs incurred by appellant on this appeal should be and they are taxed to him. The costs incurred by appellees on their appeal should be and they are taxed to them.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.